G. Ferrer e Hijo, demandante y apelada, *v.* American Railroad Company of Porto Rico, demandada y apelante.

No. 4200.—*Sometido:* Febrero 8, 1928. *Resuelto:* Enero 23, 1929.

*M. Acosta Velarde*, abogado de la apelante; *F. B. Fornaris*, abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

La demandante reclama daños y perjuicios causádosle a un autocamión de su pertenencia con motivo de un choque entre éste y una locomotora de la American Railroad Company.

En la demanda se alega que la demandada fué negligente al no haber tocado señal de alarma y al no haber reducido su velocidad al pasar por el cruce donde ocurrió el accidente.

En un sitio como a dos kilómetros de Arecibo y al lado de la vía del ferrocarril, cerca del mar, está la factoría Miramar. Para llegar a esta factoría, uno necesariamente tiene que cruzar la vía del ferrocarril y en realidad de verdad, y así lo designó la corte inferior, ha surgido un camino

privado. Como éste es el único camino que conduce a la factoría, todas las personas que tengan que ir a ella a tratar algún asunto, y todos los empleados de la misma, tienen que cruzar la vía y generalmente así lo hacen. De los autos no aparece prueba alguna de que el camino sea usado generalmente de otra manera por el público. Una persona que vaya por la carretera que conduce de Arecibo a Hatillo, en dirección oeste, tiene que hacer una curva hacia el norte con el fin de cruzar la vía. Entonces el camino es recto y se extiende por un buen número de metros antes de llegar a la vía. Antes de cruzar la vía, en dirección norte, o sea, a la izquierda de una persona que se dirija a la factoría, la vista de la vía está total o parcialmente obstruida por árboles altos y por una cerca de zinc. Es de dudarse que el conductor de un autocamión pueda ver la vía hasta que haya pasado estas obstrucciones, o parte de ellas. Sin embargo, como cuatro metros antes de llegar a la vía cesan todas las obstrucciones y un viandante puede ver claramente los rieles en ambas direcciones. Si bien hay una ligera diferencia en el nivel de la altura antes, desde el arco de la curva hasta la vía la carretera es completamente llana. En el cruce, mirando en dirección oeste, de donde venía el tren, la vía es llana y recta por un trayecto bastante largo.

Existe algún conflicto de prueba respecto a la manera en que el conductor del vehículo se acercó a la vía. Un testigo, al que no dió crédito la corte, dijo que se trató de cruzar la vía con bastante rapidez, y los otros testigos, creídos por la corte, dijeron que el conductor del camión iba por la carretera a regular velocidad. La corte llegó a la conclusión de que el conductor del autocamión iba ejerciendo debido cuidado. No hubo prueba de que él jamás se parara. Por el contrario, todos los testigos convinieron en que no se había parado.

██ La relación del caso que precede puede estar sujeta a correcciones o puede que sea deficiente, pero la hemos hecho parcialmente para indicarle a la apelante lo que debe

hacer con el fin de ayudar a esta corte. Una revisión de las alegaciones o el hacer un resumen de la prueba no equivale generalmente a lo que el Reglamento quiere decir al exigir una relación concisa del caso. Lo que esta corte desea primeramente es una relación gráfica de la situación física, y luego la esencia de lo ocurrido. Por supuesto, a veces es conveniente que un apelante segregue en tal relación del caso los hechos en controversia, de los no controvertidos, pero aun si entonces hace un resumen en forma favorable para él, siempre que no se trate de un caso de mero conflicto de prueba, contribuye a dar a la corte una idea gráfica de lo ocurrido y le permite que; entienda y defina más perfectamente las cuestiones en controversia. La apelante en este caso creyó necesario hacer en su alegato un resumen de la prueba, testigo por testigo, y dar posteriormente en su argumentación algunos de los detalles.

■ La conclusión básica de la corte fué que, rigiéndose por el caso de *Marrero* v. *Am. Railroad Co.*, 33 D.P.R. 207, y por otras autoridades, se trataba de un camino público. Nos sentimos obligados a resolver, de conformidad con la prueba no controvertida del presente caso, que consistió de declaraciones verbales y fotografías, que el camino por el cual viajaba el agente de la demandante nunca fué un camino público en el sentido corriente. Lo más que podría decirse respecto a su naturaleza pública es que el camino era prácticamente el único que podía utilizarse para ir a la Factoría Miramar, y que era usado más o menos continuamente por las personas que tenían negocios con la fábrica, así como por los empleados de la misma. No hay prueba al efecto de que ninguna otra parte del público jamás usara el camino. En el cruce la compañía ferroviaria había puesto varios letreros que leen ''Prohibido el paso.''

■ La demandada sostenía que bajo estas circunstancias nada había que distinguiera a este camino de cualquier otro camino privado; que el exigir a las locomotoras de la compañía dar toque de alarma en éste y en otros cruces priva-

dos, sería requerir demasiado y convertir los trenes de la compañía, con sus ruidos continuos, en estorbos públicos.

La apelada alega que la demandada reconoció la naturaleza pública del camino al poner un letrero exigiendo, y al instruir a sus maquinistas, dar un toque de alarma antes de acercarse a la factoría. El camino queda al este de la factoría. La demandada dice, o da a entender, que tomó esta medida en beneficio de los trabajadores de la factoría. El maquinista del tren declaró que había pasado por aquel lugar en innumerables ocasiones y que raras veces había visto tráfico alguno en el cruce.

La distinción principal entre este caso y el de *Marrero v. Am. Railroad Co., supra,* es que en este último la compañía había reconocido el carácter público o cuasi público del cruce al poner letreros que leían "Párese, mire y oiga," demostrando con ello que sabía que el público generalmente pasaba por allí. Sin embargo, no estamos preparados para decir que la demandada no tenía deber alguno, y dadas las condiciones y la opinión de la corte inferior, asumiremos, de no decidirlo, que el camino había tomado tal naturaleza que la demandada tenía algún deber para con las personas que viajaban por el mismo.

De conformidad con las autoridades, según el examen que de ellas hemos hecho, en tal cruce, que no es claramente un cruce público, el deber de la compañía es dar algún aviso y usar el cuidado ordinario. La ley no exige que en estos sitios rurales los trenes reduzcan la velocidad.

Sin embargo, la conclusión principal de la corte inferior fué que el accidente se debió a haber dejado el tren de la demandada de reducir la velocidad. La corte basó esta conclusión en la ley de diciembre 6, 1917. El artículo pertinente en que se descansa lee como sigue:

"*Aparatos de seguridad en cruces, etc.*—Si se tratare de una compañía de ferrocarril, ésta deberá construir y conservar cadenas, portones u otros aparatos adecuados de protección, en todos los cruces a nivel de las carreteras públicas insulares y en los demás cruces

públicos que la Comisión designare y, con sujeción a las reglas, reglamentos y órdenes de la Comisión, deberá cercar o de otra manera adecuada guardar o proteger sus vías, en aquellos sitios que la Comisión designare, de modo que los animales no puedan entrar en ella; deberá instalar en sus locomotoras campanas y silbatos que deberán usarse al acercarse a curvas, túneles y a los cruces de caminos o calles y siempre que fuere necesario como advertencia de la aproximación de dichas locomotoras y trenes los que reducirán la velocidad al mínimum en los cruces de calles; y deberá usar, después de la puesta del sol, las luces que sean necesarias y que la Comisión determine.'' Capítulo II, artículo 3, apartado (*q*), de la Ley No. 70, Leyes de 1917, p. 449.

De una mera inspección de esta ley se desprende claramente que el deber de reducir la velocidad surge solamente al cruzar las calles, y que toda la ley es aplicable a cruces reconocidos como caminos públicos. En modo alguno es el camino en cuestión un camino público dentro del significado del estatuto.

■ La apelada no ataca seriamente el error referente a la posición tomada en la opinión de la corte inferior, pero arguye que contiene pronunciamientos más específicos de negligencia y otras consideraciones más generales. Sin embargo, no podemos leer la opinión de la corte sin llegar a la conclusión de que la negligencia principal de la demandada que estuvo en la mente del juez sentenciador fué el no reducir su velocidad al pasar por este cruce determinado, según lo exige la ley citada. Asumamos, no obstante, que la resolución general a favor de la demandante deba ser examinada, y no las conclusiones erróneas de la corte.

Antes de abandonar la cuestión de la naturaleza del camino sería bueno notar, a instancias de la apelante, que la demandante alegaba que el cruce en cuestión era un camino público. Dudamos, sin embargo, que la demandada fuera inducida a error por esta alegación. Si la demandada tenía para con la demandante un deber que descuidó, no lo consideraremos como una variación material.

Hubo varios testigos que hablaron sobre la velocidad

del tren. El punto culminante de estas declaraciones fué que el tren corría a una velocidad *exagerada* por venir retrasado. La opinión de la corte inferior citaba con aprobación las decisiones de ésta y de otras cortes al efecto de que un vehículo puede ir a gran velocidad por sitios fuera de la zona urbana. Las exigencias del tráfico público requieren eso. Haciendo, sin embargo, un examen de toda la prueba, hemos quedado satisfechos de que la demandada no conducía el tren a tal velocidad que constituyera negligencia. Decididamente no era el deber de la demandada reducir su velocidad a un mínimo.

██ Lo mejor para la demandante hubiese sido demostrar que la demandada, infringiendo la conducta humana que debe seguir una corporación de servicio público, dejó de dar el debido aviso al pasar por este cruce. En la opinión la corte dijo que los avisos de alarma dados por la demandada habían sido demasiado tardíos. La prueba de ambas partes demostró claramente que un instante antes de la colisión la locomotora dió una serie de avisos de alarma. El maquinista mismo declaró que él vió al chauffeur de la demandante casi inmediatamente antes del accidente. Estos avisos fueron demasiado tardíos para evitar el accidente y creemos que fué a estos avisos de alarma que la corte se refirió. Si bien por lo menos tres de los testigos de la demandante dijeron que no oyeron ningún silbido antes de darse los avisos de alarma, dos de estos testigos declararon que no estaban en posición de oír el silbato de la locomotora que se acercaba, en caso de que ésta hubiese tocado. Ellos sí oyeron los avisos de alarma cuando el tren estaba directamente enfrente de la factoría. Los otros testigos de la demandante simplemente no oyeron el silbato anterior.

De una parte, la regla de la ley a este respecto es que la negligencia de la demandada debe probarse con preponderancia de prueba. *Miranda* v. *P. R. Ry. Lt. & Power Co.*, 31 D.P.R. 778; 45 C. J. 1163 *et seq*. Y de otra parte, prueba de no haber oído es frecuentemente lo más que un testigo

honrado puede decir. No obstante, el derecho a percibir indemnización debe depender *prima facie* de una demostración más fuerte que la presentada en este caso. En la vista de un juicio celebrado meses después se debió hacer que todos los testigos demostraran que probablemente hubiesen oído y también que recordaban que el agente de la demandada dejó de tocar el pito oportunamente antes de llegar al cruce.

Al discutir las presunciones, según veremos más tarde, se dice que una persona, a falta de otra prueba, se presume que cruce la vía con el debido cuidado. Las cortes a veces dicen que una presunción similar existe respecto a que un empleado del tren o maquinista también cumplió con su deber. Como la compañía demandada imponía el deber a sus maquinistas de tocar el pito oportunamente antes de llegar a este cruce, aunque era controvertible, surgió la presunción de que se dió el debido y razonable aviso. Los testigos y la demandante insisten en que era costumbre dar aviso.

Sin embargo, el examen que hemos hecho de toda la prueba nos convence de que no se demostró negligencia alguna a este respecto mediante preponderancia de prueba. No solamente el maquinista sino pasajeros que iban en el tren, cuya credibilidad no fué en forma alguna atacada y quienes aparentemente eran testigos enteramente desinteresados, declararon que no sólo se dieron los avisos de alarma, sino que también los avisos indicando la aproximación al cruce fueron dados oportunamente en sitios inmediatos al cruce en que ocurrió el accidente.

Sin tomar en consideración la supuesta negligencia de la demandada, no tenemos duda alguna de que la causa próxima de este accidente fué la negligencia del chauffeur de la demandante. Según hemos visto, el verdadero cruce está en un sitio en que la vía puede verse claramente en ambas direcciones, varios metros antes de llegar al cruce de la vía. Si como algunos de los testigos de la demandante declararon, el chauffeur iba despacio, entonces él necesariamente

tenía que ver el tren a tiempo si hubiese mirado. Las fotografías y la prueba demuestran que el camión chocó con la locomotora. Esta última tiene todas las apariencias de que se chocó con ella después que sus ruedas delanteras habían pasado por el lugar del accidente. Se chocó con la locomotora en el sitio donde va el maquinista y en otras partes.

Aunque sabemos que la conclusión de la corte inferior fué contraria, nos parece imposible que este accidente hubiese ocurrido si el chauffeur hubiera ido bastante despacio, según era su deber para con él y para con su patrono. Lo más probable parece ser que él se acercó a la vía sin tomar precauciones de ninguna clase. Tanto la corte como la apelada hicieron hincapié en el hecho de que surgía la presunción de que la demandada ejercía debido cuidado. Esta presunción fué expuesta en el caso de *Baltimore & Potomac R. R. Co.* v. *Landrigan,* 191 U. S. 461, que es el principal sobre la materia, pero las autoridades dicen, y el caso citado demuestra, que tal presunción existe solamente cuando no hay prueba que demuestre como fué que el demandante se colocó sobre la vía. En otras palabras, esta presunción cede ligeramente a la prueba especial del caso. La presunción de que la demandante se acercó a la vía con el debido cuidado fué contradicha. En realidad de verdad el chauffeur nunca cruzó la vía sino que chocó con el tren al tratar de cruzar.

Resumiendo, podemos decir que no hallamos que la demandada cometiera negligencia alguna, pero que aún asumiendo tal negligencia el accidente fué causado más directamente por el descuido del chauffeur de la demandante. Bajo estas condiciones podría decirse que la relación causal entre cualquiera supuesta negligencia de la demandada y el accidente no fué demostrada satisfactoriamente. *Non constat* que el accidente hubiese ocurrido si el tren hubiera ido despacio inmediatamente antes del accidente. *Non constat* que el chauffeur de la demandante hubiera oído o pudo haber oído un aviso, de haberse dado.

*La sentencia apelada debe ser revocada y declararse sin lugar la demanda.*