FERNANDO FERRARI, demandante y apelado, *v.* AMERICAN RAILROAD COMPANY OF PORTO RICO, demandada y apelante.

No. 4098.—*Sometido:* Diciembre 6, 1928.  *Resuelto:* Enero 23, 1929.

*M. Acosta Velarde,* abogado de la apelante; *García Méndez & García Méndez,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

La Corte de Distrito de Aguadilla dictó sentencia contra la American Railroad Company y ésta ha apelado. La corte halló o resolvió, en síntesis, lo que sigue: que el accidente en cuestión ocurrió en un paso a nivel entre los barrios Aguacate y Montaña; que se probaron daños y perjuicios; que la cuestión principal a discutir era si el demandante había sido o no culpable de negligencia contribuyente; que el cruce estaba obscurecido por algunos árboles; que entre el sitio en que sucedió el accidente y el sitio hasta el cual fué arrastrado el automóvil del demandante, hay una distancia de sesenta metros; que toda la prueba del demandante demostró que la compañía demandada no tocó pito ni dió otra señal de alarma, siendo la práctica de costumbre en aquel lugar el dar esos avisos, y que el tren marchaba a una velocidad vertiginosa con la máquina al revés, y que el demandante observó todas las precauciones debidas al cruzar la vía; que había alguna prueba en contrario en cuanto a haberse oído el sonido del pito, pero la corte no la creyó; que el fogonero del tren manifestó que vió al demandante como a cincuenta o sesenta metros de distancia y le avisó al maquinista, quien trató de aplicar los frenos; que el maquinista no vió a Ferrari sino cuando estaba junto a él, y admitió que si el tren hubiera ido caminando con el botavaca hacia el frente él hubiera podido ver al demandante antes del momento en que lo vió; que (después de hacer ciertos cálculos) si la locomotora hubiera marchado como de ordinario, con el botavaca en la parte delantera, el tren hubiese podido parar antes y posiblemente a tiempo para evitar el accidente; que el tren no era uno regular de cuya llegada no se tenía conocimiento a menos que se diera aviso, de modo que los viandantes no sospechaban el peligro. La corte discute entonces la cuestión de negligencia contribuyente, y cita el caso de *Rosado*

v. *Ponce Railroad Co.*, 20 D.P.R. 564, al efecto de que no puede surgir la negligencia contribuyente, cuando el demandante no tenía motivo para sospechar que hubiera peligro; que aún si el demandante hubiese sido negligente, cosa que no ocurrió, el último acto de negligencia fué realizado por la demandada, citándose el caso de *Morales* v. *Central Vannina*, 32, D.P.R. 203.

El caso últimamente mencionado no tiene relación alguna con la doctrina de la última oportunidad expedita (*last clear change*) para evitar el accidente, sugerida por la corte. De acuerdo con los hechos de este caso, y suponiendo que la velocidad a que marchaba el tren fué la declarada por los testigos, no hubo una oportunidad clara para detenerlo a tiempo, aún si el maquinista hubiera observado el peligro en que se hallaba el demandante como a cincuenta o sesenta metros de distancia. La corte expresó que el maquinista tal vez pudo haberse parado a tiempo, pero no llegó a esa conclusión. No se estableció el hecho de que la demandada pudo haber detenido el tren a tiempo, según se discutió, tanto en la opinión de la mayoría como en la disidente en el caso de *Vidal* v. *P. R. Ry. L. & P. Co.*, 32 D.P.R. 769. Además, aún permanecería la cuestión, según lo demuestra la opinión de la mayoría, de si la negligencia del demandante no fué concurrente, ya que pudo suceder que el demandante y el tren hubieran llegado al punto de peligro aproximadamente al mismo tiempo.

Asumiremos, como lo hace la corte inferior, pero no decidiremos, que la demandada fué negligente, pero aún así, creemos que el demandante no puede recobrar indemnización alguna. Él fué culpable de negligencia contribuyente. El demandante iba en un "Ford" por una carretera que corría más o menos en forma paralela con la vía, y marchaba en dirección opuesta al tren. Él declaró que miró y oyó pero no hizo ningún esfuerzo por parar. Admitió que el "Ford", yendo como iba en primera, hacía muchísimo ruido. Otro de sus testigos declaró que el tren iba ha-

ciendo muchísimo ruido. El demandante también declaró que estaba familiarizado con la carretera y con la vía. Los hechos anteriormente expuestos son claros. Hubo conflicto respecto a algunas de las otras conclusiones de la corte que creemos no es necesario analizar, aunque no estamos del todo convencidos de que la demandada no estaba en lo cierto respecto a algunas de ellas. Según hemos dicho, estamos asumiendo, pero no resolviendo, que la demandada era culpable de negligencia.

■■ El deber general de un caminante es pararse, mirar y oír. Si su visión está algo obstruida, como parece que ocurrió en este caso, el deber de pararse es mayor, y no nos detendremos a citar las autoridades. Un número de ellas puede hallarse en la página 30 del alegato de la demandada, y en el alegato del apelado no encontramos cita alguna que resuelva lo contrario. Durante la vista, sugerimos la posible aplicación del caso de *Baltimore & Ohio R. R. Co.* v. *Goodman,* 275 U. S. 66. En dicho caso la corte dijo:

"Cuando una persona camina por la vía de un ferrocarril, sabe que camina por un sitio en que morirá si viene el tren antes de haberse salido por completo de la vía. . . . . Sabe que debe detener su marcha con preferencia al tren y no el tren con preferencia a él. Bajo tales circunstancias, creemos que si de otro modo el conductor de un vehículo no puede estar seguro de que el tren se aproxima peligrosamente, debe pararse y salirse de su vehículo, aunque evidentemente por lo general no se le exige que haga otra cosa que detenerse y mirar. Nos parece que si confía en no haber oído el tren o alguna señal, y no toma ninguna otra precaución lo hace a su propio riesgo."

El apelado trata de hacer distinción del caso por sus hechos, insistiendo más o menos en que el demandante tenía derecho a descansar en que el tren diera el aviso de costumbre. El apelado también insistió en que había alguna diferencia entre los dos casos en cuanto a la facilidad de ver la vía. La teoría es que el demandante no tenía el deber de detenerse en vista de que podía mirar o miró y no vió el tren. Según el letrado el chauffeur iba despacio y el automóvil

fué chocado en su parte posterior. En nuestra opinión la situación física de la vía en el cruce era tal que una persona que fuera en el automóvil a una velocidad ordinaria hubiera podido ponerse enteramente fuera de peligro, suponiendo que no hubiera habido posibilidad razonable de ver y oír el tren. En otras palabras, creemos que sucedió lo contrario de lo que se sostiene y por consiguiente si el demandante se hubiese parado hubiera visto y oído el tren. Convenimos con el apelado en que la doctrina del caso de Goodman no es nueva, pero creemos que la Corte Suprema estaba haciendo énfasis en la necesidad de que los viandantes sean cuidadosos. En el presente caso, además, el demandante aparentemente no pudo oír la aproximación del tren, debido, tal vez, al ruido producido por su propio carro. Estamos satisfechos, sin embargo, a juzgar por toda la prueba, que el demandante, de haberse él parado, pudo haber oído y visto el tren.

Toda vez que el demandante no tiene derecho a percibir indemnización, debido a su propia negligencia, es innecesario examinar los otros señalamientos de error.

Durante la segunda vista de este caso se hizo mucho hincapié en el hecho de que el demandante iba despacio. Dado el hecho de que el conductor de un automóvil puede desarrollar una velocidad similar a la de un tren, no estamos muy seguros de que en condiciones como la del presente caso, si un viandante trata de cruzar la vía de un ferrocarril no deba aumentar su velocidad. En este caso especial, de conformidad con la teoría del demandante, la parte posterior del automóvil fué chocada y de ser correcta esa teoría, al llegar a la vía ejerciendo el debido cuidado, debió haberle sido posible salirse de ella si hubiese ido un poco más ligero. De parecer improbable que una persona deba en ciertas ocasiones aumentar su velocidad al cruzar la vía de un ferrocarril, ello fortifica nuestra conclusión de que el demandante, probablemente siguiendo rápidamente, tanto al acercarse a la vía como al cruzarla, no ejercía el debido cuidado. En

otras palabras, no podemos concebir, cómo, si el demandante iba despacio, no tuvo amplia oportunidad de evitar el choque.

*Debe revocarse la sentencia y declararse sin lugar la demanda.*

Los Jueces, Presidente Sr. del Toro y Asociado Sr. Hutchison, disintieron.

MOCIÓN DE RECONSIDERACIÓN

No. 4098.   Resuelto en marzo 5, 1929.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

El apelado critica la reproducción que hicimos de la opinión de la corte inferior.   La reproducción fué substancialmente exacta.   La Corte de Distrito de Aguadilla no sólo resolvió que la demandada era culpable de negligencia, sino que era culpable de negligencia crasa.   No obstante, no estuvimos equivocados al decir que la corte concluyó o resolvió, substancialmente, que la cuestión principal a discutir era si el demandante había sido o no culpable de negligencia contribuyente.   Para los fines de nuestra opinión asumimos la negligencia de la demandada.

La corte inferior al discutir los hechos dijo que si el tren hubiese ido marchando en debida forma, el maquinista pudo haber visto a Ferrari a tiempo para usar los frenos y tal vez evitar el accidente.   La idea de la doctrina de la última oportunidad es que en el último momento el demandado pudo en verdad evitar el accidente.   Dada la supuesta negligencia de la demandada y la supuesta negligencia contribuyente debió haber una conclusión positiva de que a pesar de la negligencia del demandante, la demandada, sin embargo, pudo evitar el accidente.   Es cierto, según dijimos anteriormente que al final de su opinión la corte, después de discutir otras cuestiones, halló o llegó a la conclusión de que el último acto de negligencia fué cometido por la demandada.

No podemos resolverlo así.   La corte resolvió que constituía negligencia correr la locomotora con el botavaca en la

parte posterior. El apelado no nos convence de que el correr los trenes en esta forma constituye negligencia crasa, según dijo la corte. En realidad no estamos satisfechos de que el unir un tren con la máquina al revés, y correrlo así, necesariamente constituye negligencia. En el movimiento de trenes puede ser frecuentemente necesario, o aun prudentemente aconsejable, enganchar la locomotora a los carros del ferrocarril en esta forma. De todos modos no podemos hallar en los autos, ningún indicio de prueba de la posibilidad de algún acto último por parte del maquinista, que pudiera haber evitado el accidente. Directa o indirectamente nos referiremos nuevamente a esta cuestión.

La opinión de la corte demuestra que el juez hizo una inspección ocular del sitio donde ocurrió el accidente y halló que había algunos árboles y plantas en la línea de visión al acercarse a la vía. Naturalmente, creímos que la corte hallaba algunas obstrucciones a la posibilidad de ver un tren que se acercaba. El apelado ahora dice que la prueba demuestra que nada había que obstruyera la vista del demandante, sino solamente la del maquinista. No entendemos enteramente la posición asumida, mas ello no importa.

Si la vista estaba totalmente sin obstruir, entonces, de acuerdo con los hechos de este caso, estamos convencidos de que el demandante fué culpable de negligencia crasa al tratar de cruzar la vía, o al tratar de cruzarla despacio, según declararon los testigos. En la forma en que ocurrió el accidente, o sea, que la parte posterior del automóvil fué chocada por el tren, si el demandante caminaba lentamente tenía amplia oportunidad de ver el tren, y detenerse antes de la llegada de éste. Si, como parece lo más probable, él cruzó rápidamente, entonces su negligencia fué tan grande, si no mayor. De todos modos, la negligencia del demandante continuó hasta el momento mismo del accidente. De acuerdo con el apelado, en este caso no tuvo la excusa de que su vista estaba obstruída por el follaje. El demandante siempre tuvo mayor

oportunidad de evitar el accidente que la que tenían los empleados del tren.

El apelado dice que cometimos un error al aplicar la doctrina del caso de Goodman y nos cita la nota en 56 A.L.R. 645. En tanto en cuanto esta corte no deba regirse por la opinión de la Corte Suprema de los Estados Unidos, sentimos mucha simpatía hacia la idea de que el conductor de un automóvil prácticamente nunca debe estar obligado a abandonar su sitio, antes de cruzar la vía de un ferrocarril. Las condiciones se repiten. En lo que el conductor de un automóvil ha bajado, regresado y puesto en marcha su automóvil, fácilmente podría surgir nuevamente la necesidad de mirar y oír. No citamos el caso de Goodman con la idea de imponer tal deber al conductor de un vehículo de motor. La aplicación principal del caso de Goodman es la confirmación por la Corte Suprema de la nación, del deber por parte del conductor de un vehículo de pararse, mirar y oír. A juzgar por los hechos del caso, no estamos satisfechos de que el demandante ni se paró, debidamente, ni miró debidamente, ni oyó debidamente. La prueba nos convence de que no cumplió debidamente ninguno de estos actos.

■ Como una supuesta réplica a la moción de reconsideración, la apelante radicó una contestación u oposición. Hemos desaprobado esta costumbre en varias ocasiones y ampliaremos esta proposición. *Calaf* v. *Gallardo*, 36 D.P.R. 147; *Ramos Anaya* v. *López*, 36 D.P.R. 675. Prácticamente en todas las cuestiones adjetivas la regla principal es: "Oígase a la parte contraria." La corte ha adoptado una posición. La parte contraria solicita ser oída para presentar nuevos argumentos. De momento la controversia existe prácticamente entre la corte apelativa y la parte que ha perdido el pleito. Si la corte sostiene su posición, como sucede en la mayoría de los casos, entonces la parte perdidosa está obligada a creer que ha sido la última en ser oída. Si por otra parte, permitimos que se radique y considere una oposi-

ción, entonces la parte que ha perdido el litigio muy propiamente podría creer que la acción final de la corte fué adoptada con motivo de algunos de los argumentos de su contrario, a los cuales no tuvo oportunidad de replicar. Debe recordarse siempre que cualquiera de las partes, si espera vencer en el litigio, está obligada a presentar todos sus argumentos durante la vista original del caso. Si se tolera la costumbre de permitir contraalegatos, entonces el peticionario podría alegar que tiene derecho a replicar, y teóricamente no estaría muy equivocado, en vista de que la parte que propone tal moción debe tener ese derecho. Una sentencia ya obtenida podría en esa forma ser demorada indefinidamente. La manera más rápida de resolver finalmente un caso es permitir solamente la moción. *Interest reipublicae ut sit finis litium.* Si quedamos persuadidos, o parcialmente persuadidos, por la moción de reconsideración, y estamos dispuestos a oír argumentos a la entonces parte contraria que tenía una sentencia a su favor se le dará siempre oportunidad de ser oída en una u otra forma. En el presente caso no hemos leído ni considerado el contraalegato de la apelante.

*Debe declararse sin lugar la moción de reconsideración.*