Rodríguez Hevia & Co., S en C., demandante y apelada, *v.* Línea Férrea del Oeste, demandada y apelante; Valentín Negrón, demandante y apelado, *v.* Línea Férrea del Oeste, demandada y apelante; Evaristo Robles, demandante y apelado, *v.* Línea Férrea del Oeste, demandada y apelante.

Nos. 4790, 4789 y 4791.—*Sometidos:* Noviembre 22, 1929. *Resueltos:* Junio 25, 1930

*Artemio P. Rodríguez*, abogado de la apelante; *Fernando B. Fornaris*, abogado de los apelados.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

Son la consecuencia estos tres casos del choque de una locomotora con un *truck* que produjo desperfectos al *truck*, y lesiones al *chauffeur* y al peón del mismo. Se establecieron tres demandas separadas. Se practicó la prueba en el primero, y las partes estipularon que por ella fueran decididos el segundo y el tercero. En el primero se reclamaron $1,894, y la corte dictó sentencia concediéndolos. En el segundo se reclamaron $1,560, y la corte dictó sentencia concediendo mil. En el tercero se reclamaron $1,260, y la corte concedió quinientos. No conforme la demandada, en los tres casos interpuso recursos de apelación, que se vieron en un solo acto y que serán considerados en esta sola opinión y resueltos por tres sentencias basadas en la misma.

En las demandas se alegó la ocurrencia del accidente, así:

"3. Que allá para el día 27 de marzo de 1924 y más o menos a las 6 P. M., el antes referido truck de la demandante viajaba por la carretera que conduce de Bayamón a Cataño y al aproximarse al puente que existe en dicha carretera y a la salida del pueblo de Bayamón, una locomotora propiedad de la demandada que caminaba en la misma dirección y que era conducida por el maquinista Pablo Cases, quien allí y entonces era agente y empleado de la demandada dentro del límite de sus funciones como tal agente o empleado, negligentemente chocó con la parte del frente de la locomotora contra el costado derecho del aludido truck, lanzándolo a un precipicio donde quedó casi completamente destruído.

"4. Que la negligencia del maquinista consistió en no haber tocado señal de alarma de su aproximación y haber conducido la locomotora y los vagones que a ella iban pegados a una velocidad excesiva y no tomando las debidas precauciones para evitar el accidente, reduciendo la velocidad o parando la locomotora al ver que el *truck* había ganado la entrada al puente y viendo claramente que ambas

cosas, el *truck* y el tren no podían pasar al mismo tiempo por dicho puente, dado el poco ancho que éste tiene.

"5. Que el accidente y todas sus consecuencias se debió única y exclusivamente a la imprudencia, impericia y negligencia del agente o empleado de la corporación demandada, negligencia que consistió en los hechos apuntados en el párrafo anterior de esta demanda."

La demandada contestó:

"4. Acepta la demandada que allá por el día veintisiete de marzo de 1924, a la hora que se menciona en la alegación tercera de la demanda, el referido *truck* de la demandante viajaba por la carretera que conduce de Bayamón a Cataño, pero niega la demandada que una locomotora de la demandada chocara contra el aludido *truck* al aproximarse éste al puente que existe en dicha carretera a la salida del pueblo de Bayamón, alegando por el contrario que en día y hora mencionados, antes de la entrada del puente sobre el río Bayamón a la salida de Bayamón para Cataño, el indicado *truck,* que era conducido por Valentín Negrón como *chauffeur* y en el que trabajaba como peón Evaristo Robles, ambos allí y entonces agentes y empleados de la demandante, dentro del límite de sus funciones como tales agentes o empleados, fué dirigido por dicho Valentín Negrón muy hacia dentro de la vía por donde transita el tren de la demandada, en los momentos en que el tren pasaba por el sitio indicado, chocando dicho *truck* contra el tren de la demandada, por su costado izquierdo, haciendo que éste se descarrilara y la máquina fuera a caer a un precipicio; y alega la demandada que dicho accidente se debió a la negligencia absoluta de la demandante y sus empleados, especialmente a la negligencia del *chauffeur* Valentín Negrón, quien no se detuvo ni tomó precauciones al aproximarse a la vía del tren de la demandada que pasa por dicho sitio y cruza el indicado puente, y quien no prestó atención alguna a las señales de la aproximación de dicho tren que daban los empleados de la demandada.

"5. Niega la demandada que el maquinista o empleados de la demandada el día y hora mencionados en la demanda no dieran señal de alarma de la aproximación del tren o que dicho maquinista condujera dicha locomotora y los vagones que a ella iban pegados a velocidad excesiva, o que no tomaran precauciones para evitar el accidente, alegando por el contrario que dichos empleados en los momentos de dicho accidente y desde antes de ocurrir el mismo iban tocando la campana y antes de entrar a la carretera, dicho maquinista había detenido la marcha del tren; y alega además la demandada que los

empleados de dicha demandada tomaron todas las precauciones del caso para evitar el accidente, el que ocurrió por la negligencia de los empleados de la demandante al dirigir el *truck* muy hacia la vía del tren en los momentos en que el tren pasaba por dicho sitio, sin que dichos empleados de la demandante pusieran atención alguna a las señales de alarma que daban los empleados de dicho tren y sin que se pararan, miraran y escucharan antes de acercarse a la vía del tren de la demandada.

"6. Niega la demandada que el accidente se debiera a la imprudencia, o impericia o negligencia del agente o empleado de la demandada o de algún empleado o agente de la misma."

■ Juzgando la evidencia practicada, dijo el juez de distrito en la relación del caso y opinión en que basó sus sentencias:

"La versión que nos da la demandada de cómo ocurrieron los hechos no me merece crédito, ni la creo aceptable, y me inclino a creer la teoría de la demandante corroborada por el *chauffeur* y el peón del *truck*, de que ellos iban marchando a una velocidad moderada, que al llegar cerca del puente venía el tren de la demandada, que se les apareció súbitamente, viniendo también de Bayamón hacia Cataño; que al verlo tan próximo a ellos el peón del *truck* se asustó o confundió, y que dió un campanazo para mandar a parar el *truck*, porque ya estaba muy cerca de ellos el tren, que en ese momento, el *truck* giró hacia la derecha, y el tren, en su afán de pasar, le dió al *truck* por la parte trasera y lo tiró al precipicio."

Y seguidamente agregó:

"La cuestión a resolver es si en esas circunstancias existe negligencia contributoria por parte de los empleados del *truck*, de tal naturaleza que impida que se puedan recobrar daños y perjuicios por el accidente sufrido.

"Entiendo que se probó que en el puente por donde iba a pasar el tren, no cabían dos vehículos al mismo tiempo; tampoco se probó que el tren tuviera la exclusiva de pasar por este puente, y por el contrario de la prueba aparece que este puente está en una carretera insular, teniendo derecho a pasar por él un tren particular como el *truck* de referencia. Digo esto para aclarar la responsabilidad que pudiera haber en este caso.

"Teniendo en cuenta el sitio donde ocurrió el accidente, el dilema que se presentó a los que iban en el *truck* fué sencillamente el

siguiente: Si seguían caminando, se meterían en el puente, y el tren, por lo cerca que estaba, los alcanzaría y sin duda alguna ocurriría un accidente quizás más serio aún que el ocurrido; o, detenerse inmediatamente, de tal manera que le dieran paso libre al tren, que venía ligero, para evitar que ocurriera una desgracia. Aparece que en la confusión, y debido a la inminencia del peligro, el peón del *truck* se asustó y dió la señal errónea.

"Ahora, en cuanto al tren, ¿pudo éste desconocer el hecho de que el *truck* iba por la carretera, delante de él? Entiendo que no. Estaba en la obligación de verlo, de acuerdo con la ley."

En su alegato, señala la parte apelante la comisión de trece errores, que argumenta luego en grupos.

Los dos primeros señalamientos se refieren a que según la demandada apelante, la corte partió para formular su juicio de la base errónea de que el accidente había ocurrido en el puente.

Para convencernos de que no es así, basta leer la relación del caso y opinión de la corte, y tomar en consideración las mismas fotografías en que tanto énfasis hace la parte apelante al discutir su noveno señalamiento de error.

Por los señalamientos tercero y cuarto, se sostiene que la corte erró al decidir que el *truck* iba delante del tren al ocurrir el accidente, y al no resolver que "el *truck* iba más hacia atrás de la máquina y el vagón, y que fué el *truck* el que chocó con el vagón al desviarse muy hacia la derecha."

Recordamos los esfuerzos extraordinarios que hizo el abogado de la apelante en el acto de la vista y hemos considerado su hábil argumentación en el alegato sobre estos señalamientos de error, pero no podemos estar conformes con su teoría. La prueba de los demandantes sostiene por completo las conclusiones del juez de distrito, y el conflicto que surgiera a virtud de ciertas declaraciones aportadas por la demandada fué resuelto en contra de ésta, sin que exista indicio alguno de pasión, prejuicio o parcialidad, o pueda advertirse ningún error manifiesto. Al contrario. Analizadas las declaraciones, los hechos mismos y las fotografías, se concluye que la

versión aceptada por el juez es la más lógica y la que probablemente más se acerca a la verdad de lo ocurrido.

Los errores 5, 6 y 6 b, giran alrededor de la aplicación de la doctrina de emergencia por la corte sentenciadora.

Para actuar en la forma en que lo hizo, la corte de distrito se guió por la siguiente cita de Ruling Case Law:

"Se desprende de lo que hemos dicho que todo acto que tiende a privar a una persona de su habilidad de ejercer sus facultades intelectuales y de ser dueña de sus propias actuaciones, la releva de una imputación de negligencia que de lo contrario podría surgir de su conducta. Las emergencias y los peligros repentinos ilustran esta proposición. Expuesta judicialmente, la regla es que el que hallándose en una emergencia repentina actúa de acuerdo con su mejor criterio, o que, por falta de tiempo para formar criterio, deja de actuar en la forma más juiciosa, no se le puede culpar de negligencia. Así, pues, se ha resuelto que el dueño de un restaurante no era responsable del acto de un empleado al tratar de remover una lámpara incendiada. Aparecía que el empleado descubrió que una lámpara peligrosa de gasolina estaba incendiándose, y, levantándola, trató de sacarla del local. Al hacer esto, sus ropas cogieron fuego. Entonces tiró la lámpara, que explotó, lesionando seriamente al demandante. Al confirmar una sentencia de *nonsuit*, la corte dijo: 'El acto del empleado que lanzó la lámpara se realizó en un momento en que él mismo estaba incendiándose, lo realizó como una medida indispensable y urgente de propia conservación. El estaba luchando por sacar la lámpara del local: un acto enteramente propio y plausible. Para hacer esto, la había tomado en sus manos y se dirigía a la puerta cuando las llamas emitidas por el líquido ardiendo lo atacaron y lo amenazaron con las consecuencias más serias, y, posiblemente, fatales. Para escaparse de esta calamidad, instintivamente arrojó la lámpara; pero no hasta que se había quemado severamente. Ese acto, realizado en circunstancias tan extremas, no debe regirse por las reglas que son ordinariamente aplicables a los actos perpetrados a sangre fría, con tiempo y oportunidad para que la parte considere las consecuencias y el método del acto que está próximo a realizar. Las decisiones de esta corte y de otros tribunales son muy numerosas en la aplicación del principio a casos en que las personas que se colocan repentinamente en situaciones de riesgo o peligro inminente hacen cosas que ordinariamente constituirían actos de negligencia.' Una persona en cuya posesión y bajo cuyo dominio se incendia un

material combustible, y que, al removerlo con el fin de salvar su propiedad, destruye la ajena, no está en situación de alegar el beneficio de la regla de que el que se ve obligado a actuar en una emergencia no es responsable por dejar de ejercer el mejor criterio que sería hijo de la deliberación, pues esa regla es aplicable entre la persona que actúa y la persona a causa de cuya culpa se ve obligada a actuar sin tiempo para deliberar. El caso debe regirse por otra regla reconocida, a saber, que cuando una pérdida ha de ser sufrida por una de dos personas inocentes, recae sobre la menos inocente." 20 R. C. L. 29.

Creemos que la corte actuó correctamente. Además, las circunstancias que revelan las pruebas son tales, que aunque no se hubiera dado la señal errónea que se dió, el accidente hubiera probablemente ocurrido, y entonces hubiera sido en el propio puente y tenido, quizá, peores consecuencias. El *truck,* que iba delante, tenía derecho a caminar por donde iba, y necesariamente, dado lo estrecho del sitio, al acercarse al puente y pasar por él, debía hacerlo por sobre de la vía. Dada la diferencia de velocidad a que marchaban, el *truck* despacio, y la locomotora aprisa, y lo cerca, casi encima, que se encontraba la locomotora del *truck* cuando el peón de éste dió la señal, la locomotora hubiera alcanzado al *truck* y chocado con él, aunque no se hubiera parado.

▮▮ Por los errores 7, 8 y 10, se sostiene que la corte debió haber decidido que los que manejaban el *truck* fueron culpables de negligencia al no tomar las debidas precauciones al cruzar el puente, y al no cumplir con el aviso de "párese, mire, y oiga" que antes de él estaba colocado, y en vez de ello, resolver "que no habiéndose demostrado que el tren tuviera la exclusiva de pasar por el puente, la demandada era responsable."

En primer lugar, no se trataba propiamente de un cruce. En segundo lugar, aunque el sitio era peligroso en verdad, todo lo que podía esperarse es que el que guiaba el *truck* mirara y se cerciorara de si el puente estaba libre, y en efecto lo estaba. Fué la incomprensible decisión del que

guiaba la locomotora de seguir adelante, lo que ocasionó, bien puede decirse que únicamente, el accidente. Aun teniendo la exclusiva, no hubiera podido el tren pasar por un puente ocupado previamente, con derecho o sin derecho, por un *truck*.

Por ser ilustrativas del derecho de ambas partes en casos como éste que resolvemos, transcribimos las dos citas que siguen, que tomamos del alegato de las partes apeladas. Dicen:

"La regla ha sido bien establecida, que cuando las vías de un ferrocarril están tendidas longitudinalmente sobre un camino público, el público tiene derecho al uso de todo el camino, incluyendo aquella parte del mismo sobre la cual están colocados los rieles, mientras tal derecho no sea incompatible con el derecho de la compañía de correr sus trenes, en forma razonable, sobre sus propias vías; y que por tanto, uno que esté sobre las vías en el camino, no es un transgresor. De acuerdo con el principio antes indicado, a los efectos de que personas que se hallan en las vías de un ferrocarril en un camino público, no son transgresores, las cortes, en un número de casos han sentado reglas generales en relación con los mutuos deberes y responsabilidades de una compañía ferroviaria y del público en el uso del camino. La doctrina general aparecería ser que los caminantes y los conductores de vehículos tienen derecho al uso del camino, incluyendo aquella parte del mismo sobre la cual están tendidas las vías, y que tal derecho es igual al de una compañía ferroviaria." Baltimore, etc. R. Co. v. Cumberland, 176 U. S. 232. Southern Ry. v. Caplinger, 151 Ky. 749.

"La responsabilidad de una compañía ferroviaria que explota trenes en un camino público es muy diferente de su responsabilidad al explotar trenes donde tiene derecho exclusivo de paso, y en sitios donde sus empleados a cargo de los trenes no tienen motivo para esperar que haya personas sobre la vía, y ha sido bien establecido que es el deber de compañías ferroviarias que así funcionan en un camino público, el ejercer un grado de cuidado que corresponda al peligro de tal funcionamiento, y que el dejar de observar las debidas precauciones, bajo las circunstancias peculiares del lugar, constituye negligencia. Ellas están obligadas, a todas horas del día y de la noche, a prever la presencia de viandantes en el camino, y a tomar aquellas precauciones, en lo referente a velocidad, alarma, y vigilan-

cia, que sean razonablemente suficientes para evitar daños a dichos viandantes.'' Lampkin v. McCormick, 105 La. 418.

El error 9 no tiene importancia. Por el hecho de que el juez no mencionara las fotografías al referirse a la prueba de la demandada, no puede asegurarse que no las tuviera en cuenta al formar su criterio en cuanto a la prueba. Hemos examinado por nosotros mismos esas fotografías, y no obstante lo hábilmente que están tomadas, lo estrecho del sitio y las condiciones del mismo pueden apreciarse, y todo ello en vez de destruir lo dicho por los testigos de los demandantes y aceptado como probado por el juez lo confirma.

En su duodécimo señalamiento atribuye error la apelante a la corte de distrito al resolver que el choque se debió a la falta de previsión de las personas que conducían el tren, y al declarar las demandas con lugar.

Creemos que todo cuanto hemos dicho es suficiente para concluir que este error no existe. No nos detendremos en un análisis minucioso de la prueba. Bastará decir que leyéndola se llega el convencimiento de que a no haber sido por la conducta negligente o temeraria de los empleados de la demandada, el accidente no hubiera podido ocurrir.

Resta sólo considerar el señalamiento undécimo. Por él se impugnan las sentencias recurridas, en cuanto a la cuantía de los daños. En los casos números 4789 y 4791, hay prueba suficiente para sostener las sentencias de mil y quinientos dólares dictadas. Los demandantes sufrieron lesiones que se especifican. Se comprueba lo que ganaban, el tiempo que estuvieron recluídos en el hospital, los gastos de médico y medicina y la condición en que han quedado.

En el caso número 4790, la prueba es deficiente, y así lo reconoce la propia parte apelada, Rodríguez Hevia & Co., S. en C., en cuanto a la partida de $900 por lo dejado de ganar, pidiendo que se devuelva el caso a la corte inferior para aclarar el extremo. No es posible. Ella tuvo su oportunidad, y debemos considerar que la transcripción es com-

pleta, ya que así se certifica y nada se probó en contrario a su tiempo, y ahora lo que se hace es una mera suposición.

La prueba con respecto a la partida de $300 por depreciación es demasiado vaga para poder servir de base a una sentencia condenatoria. La de la otra partida de $694, por reparaciones, sólo alcanza a $600.

A virtud de todo lo expuesto *la sentencia en el recurso número 4790 debe modificarse, reduciendo la cuantía de los daños a $600, y así modificada, confirmarse, y las sentencias en los recursos números 4789 y 4791 deben ser confirmadas en su totalidad.*

Los Jueces Asociados Señores Wolf y Aldrey disintieron.*

EN RECONSIDERACION
Julio 10, 1930

■ La parte demandada y apelante ha presentado en estos casos mociones de reconsideración. Pide en ellas en primer término que se modifique la sentencia dictada en cada caso eliminando el pronunciamiento de costas, porque si dos jueces de los cinco de que se compone el tribunal estuvieron conformes en que le asistía la razón, no debe considerársele como un litigante temerario.

Luego sostiene que deben reconsiderarse totalmente las sentencias, primero, porque según ella los hechos en su caso son exactamente iguales a los hechos en los casos de *Ferrer e Hijo* v. *American Railroad Co.,* 39 D.P.R. 40 y *Ferrari* v. *American Railroad Co.,* 39 D.P.R. 49, ya que resulta de los autos que el *chauffeur* del *truck* no se paró, miró, ni oyó antes de entrar al puente; y, segundo, porque no se probó que se diera señal errónea, no existiendo por tanto caso alguno de emergencia.

Estudiaremos primero las impugnaciones a la totalidad de las sentencias.

Los hechos en el caso de *Ferrer e Hijo, supra,* son distintos. El ferrocarril caminaba por su vía. Esa vía era

---

* NOTA: Véase el prefacio.

cruzada por un camino que daba acceso a una factoría, usado sólo por personas que negociaban con la fábrica y que tenía un letrero que decía: "Prohibido el Paso." Por ese camino, en esas condiciones, fué que cruzó el *truck* con que chocó el tren. Aquí el tren de la demandada salió de su vía privada para aprovecharse de un puente público sobre el cual se le permitió tender sus rieles y cruzar por él y el *truck* con que chocó estaba más cerca del puente que la máquina y los vagones del tren de la demandada. El accidente en el caso de *Ferrari, supra,* también ocurrió al cruzar el demandante la vía del ferrocarril no obstante haber tenido oportunidad de ver la máquina y los vagones acercarse al cruce.

En cuanto al otro extremo de que no existe prueba de que el *truck* se parara, en las mismas mociones de reconsideración se hace referencia a que el peón del *truck* declaró que tocó la campana al *chauffeur* para que parara. Los autos demuestran que paró en la forma que indicó el juez sentenciador, pero suponiendo que no lo demostraran, entonces la responsabilidad de la demandada al alcanzar al y chocar con el *truck,* sería aún más fuerte.

*No hay, pues, motivos para reconsiderar las sentencias en lo fundamental.* La argumentación relativa a la no imposición de las costas es digna de tomarse en consideración y a los efectos de resolverla definitivamente debe darse a la otra parte oportunidad de ser oída.

Los Jueces Asociados Señores Wolf y Aldrey disintieron en cuanto a la no reconsideración.*

EN RECONSIDERACION
Julio 24, 1930

A la audiencia acordada comparecieron ambas partes por sus abogados e informaron oralmente, presentando la parte apelada además un alegato escrito oponiéndose a la modificación de la sentencia en el sentido de eximir a la demandada del pago de las costas.

---

* NOTA: Véase el prefacio.

La parte apelada hizo énfasis en el hecho de que las costas no fueron impuestas por este tribunal, sino por la corte de distrito que juzgó el caso y cuya sentencia fué confirmada, y en que la apelante ni recurrió expresa y separadamente del pronunciamiento de costas, ni señaló en su alegato como error la imposición de las mismas.

No es necesario apelar separadamente de cada pronunciamiento que una sentencia contenga. Basta apelar contra la sentencia para que se entienda que se apela de todos sus pronunciamientos, pero sí debe señalarse como error en el alegato y argumentarse por qué, cualquier pronunciamiento que el apelante estime que le perjudica y que es contrario a los hechos o a la ley. De otro modo, el Tribunal de Apelación no considerará el punto al resolver el recurso, y ésa es la norma que debemos seguir en este caso, sin que haya lugar, por tanto, a tomar en consideración los nuevos argumentos que presenta la parte demandada y apelante.

Parece conveniente citar lo resuelto por esta Corte Suprema en *Vere* v. *Bianchi,* 36 D.P.R. 728, 730:

"El demandante Charles Vere ahora alega que al apelar de la sentencia de la Corte de Distrito de Mayagüez también apeló del pronunciamiento de costas, y hallamos que esto es cierto. Por otra parte, la cuestión de que se le eximiera del pago de las costas fué abandonada en su alegato. Ninguno de los señalamientos de error trata sobre este extremo, y no se discute la cuestión en ninguna parte del alegato presentado a esta corte. Resolvemos que habiendo el demandante renunciado su derecho en esta forma, no debe ahora oírsele con respecto a la cuestión de las costas. Dudamos que la posición del demandante deba ser mejorada después de haber transcurrido este período de tiempo."

*Debe declararse también sin lugar la moción de reconsideración en cuanto a las costas.*

Los Jueces Asociados Señores Wolf y Aldrey disintieron.*

* NOTA: Véase el prefacio.