ALTAGRACIA SANTOS, en su propio nombre, y a nombre y en representación de los menores bajo su patria potestad, ESPERANZA, ROBERTO, VÍCTOR M. y GLORIA INÉS CORREA SANTOS, demandantes, apelados y apelantes *v.* THE FAJARDO DEVELOPMENT Co., demandada, apelante y apelada.

No. 5581.—*Sometido:* Diciembre 4, 1931. *Resuelto:* Marzo 16, 1933.

---

\* NOTA: Véase el prefacio.

*Jaime Sifre* y *Horacio Franceschi,* abogados de la apelante apelada; *Bolívar Pagán,* abogado de los apelados apelantes.

El Juez Asociado Señor Aldrey, emitió la opinión del tribunal.

Francisco Correa murió estando casado con Altagracia Santos con la que tuvo varios hijos que eran menores de edad cuando falleció, y su viuda por sí y en nombre de esos hijos demandó a The Fajardo Development Co. para que le pagase la cantidad de $15,000 por la muerte de Francisco Correa que atribuyeron a negligencia de los empleados de la demandada. La sentencia que resolvió ese pleito condenó a la demandada a pagar $3,000 sin costas y ambas partes apelaron de ella: la demandada porque entiende que no debe ser condenada al pago de cantidad alguna; los demandantes porque debe serles concedida mayor indemnización. Ambos recursos han sido tramitados y vistos conjuntamente. Resolveremos en primer término el de la demandada.

Según la demanda, la muerte de Francisco Correa fué causada por un tren del ferrocarril de la demandada que se dirigía de Fajardo para Río Grande, poco antes de llegar a la estación de Mameyes, a las once de la noche del 8 de marzo de 1929. Según la demandada a esa hora y en esa fecha no ocurrió accidente alguno pero al regresar dicho tren para Fajardo, poco antes de llegar a la estación de Mameyes a la una de la madrugada del 9 de marzo de 1929, el maquinista del tren vió en la vía férrea un bulto, sin poder precisar lo que era, y quiso parar el tren sin haberlo logrado hasta des-

pués de haberle pasado por encima a dicho bulto, que luego resultó ser el cuerpo de Francisco Correa. La corte inferior llegó a la conclusión de que los hechos en ese particular ocurrieron a las once de la noche como dice la demanda. Aunque la demandada no alega error en cuanto a esa conclusión, sin embargo, dedica la mayor parte de la argumentación de su primer motivo del recurso, fundado en otras cuestiones, a demostrar que no es sostenible esa conclusión de la corte sentenciadora. El estudio que hemos hecho de la prueba nos convence de que tal conclusión es correcta, pues la declaración del único testigo de los demandantes sobre ese particular está corroborada por la prueba de la demandada, ya que la cabeza del occiso estaba antes de la estación de Mameyes y el cuerpo sobre el cual pasó el tren a la una de la mañana estaba sin la cabeza al otro lado de la estación, algo distante de ella. En vista de la precedente conclusión nos limitaremos a la prueba referente al tren que iba de Fajardo para Río Grande, que pasó por la estación de Mameyes a las once de la noche, y a la que con ella se relaciona.

El único testigo del accidente que causó la muerte de Francisco Correa es Ángel González, que con aquél andaba esa noche. Los demás son para corroborar algunas de sus manifestaciones. Ángel González, hombre de 32 años, declaró en el juicio que como de diez y media a once de la noche del 8 de marzo de 1929 llegó Correa con un jarro de leche al cafetín donde trabajaba el testigo en el barrio de Mameyes o Palmer, de Río Grande, y le pidió un poco de café negro para echarle a la leche; preguntó al testigo si se iba en seguida, a lo que le contestó que se esperara un momento en lo que cerraba el cafetín: que allí estaba Carlos Pérez y salieron los tres, quedándose Carlos Pérez en la entrada de la estación en el cafetín de Jesús Ríos. Que Correa y el testigo tomaron el camino que va desde la carretera a la estación de Mameyes y al llegar a tres o cuatro metros del cruce de la vía el testigo se paró para encender un cigarrillo y Correa siguió pero al momento sintió ruido y vió al tren que venía de Fa-

jardo a eso de las once de la noche a una velocidad grandísima y cuando trató de llamar a Correa ya el tren lo había cogido: que el tren siguió sin parar: que iba como a ochenta millas por hora: que en el sitio del cruce no había cadenas o portones ni luces en la estación, la que estaba cerrada y sin guardián: que la máquina del tren no tocó el silbato: que el camino por donde andaban es público y cruza la vía: que ese camino es el que acostumbraba pasar para ir a su casa: que el tren no detuvo su marcha al llegar a ese cruce: que después que pasó el tren se arrimó a la vía y encontró la cabeza de Correa y que el resto del cuerpo se lo llevó el tren, siendo hallado al día siguiente a larga distancia: que la noche era oscura: que volvió para el pueblo a dar la noticia y que la primera persona que encontró fué a Carlos Pérez y llamaron gente y fueron al sitio a ver el cadáver y allí se amanecieron: que del cafetín a la estación hay como dos o tres kilómetros: que el tren llevaba los vagones vacíos, lo que pudo ver desde el sitio en que estaba: que llevaba delante de la locomotora cuarenta o cincuenta vagones: que la máquina no llevaba luces: que cuando el tren lleva delante los vagones no se puede apreciar el ruido: que la estación queda al otro lado del camino: que en el poblado hay un policía al que dieron cuenta de lo ocurrido: que es familia de Correa: que éste vivía por dicho camino, un poco más adelante y que mucha gente pasa por él. El testigo Carlos Pérez, de 34 años de edad, confirmó en cuanto a él se refiere lo dicho por González y manifestó además que como diez o quince minutos después de haber salido González con Correa regresó aquél con la noticia de la muerte de Correa. El perito médico fué al día siguiente al sitio y encontró la cabeza a un pie de la vía izquierda como a diez o doce metros de la estación y a su lado una botella con un líquido que aparentemente era leche: tuvo que andar más de doscientos metros para encontrar el cuerpo, que estaba despedazado y bastante lejos de la cabeza: y que la muerte fué producida por la separación de la cabeza del cuerpo por una carga cortante y pesada. El alcalde de Río

Grande declaró que el camino donde murió Correa es público y cruza la vía férrea de la demandada y que por él ha pasado muchas veces. Un testigo de la demandada, Ramón Alonso, reconoció que existe dicho camino que va desde la carretera a la estación y continúa hasta una finca y que por él pasa la gente: él también lo usa. El conductor del tren declaró que salieron de la central en Fajardo con un número de vagones que con los que cogieron en San Miguel completaron setenta vagones y entonces empezaron a repartir de ellos en varios desvíos continuando luego con treinta y tres con destino a Palmarejo: que antes de llegar a ese sitio pasaron por la estación de Mameyes como a las once de la noche: que la máquina iba delante de los vagones, pero luego dijo que los vagones iban antes que la máquina: que llevaba focos potentes encendidos: que cuando pasaron por la estación de Mameyes estaba cerrada y no se detuvieron en ella sino en la colonia Blasina que está bastante retirada de dicha estación: que cuando terminaron de repartir los treinta y tres vagones en Palmarejo regresaron cogiendo caña hasta hacer un número de veinte vagones: que cuando regresaban para Fajardo llevaba el tren cargado con caña: que a eso de la una de la madrugada divisó un bulto y el tren le pasó por encima porque no pudieron detenerlo, como a setenta y cinco, ochenta o cien metros antes de llegar a la estación de Mameyes: que ése fué el único percance que tuvieron esa noche: que con frecuencia ponen los vagones delante de la máquina y entonces llevan un farolito pequeño en el que va delante, vigilando las cañas: que esa noche no había focos o luces en la estación de Mameyes: que en el cruce donde ocurrió el accidente no hay cadenas ni portones para cerrar el tránsito cuando pasa la locomotora: que el pito se toca al pasar por los cruces: que el tren no paró en Mameyes cuando iba de Fajardo y que esa noche no funcionaron con los vagones delante. Patricio Navarro, maquinista del expresado tren, dijo que esa noche la máquina llevaba encendidos los focos delanteros: que no vió a persona alguna en la vía y que al re-

gresar para Fajardo a eso de la una de la madrugada, vió un bulto en la vía y aunque puso los frenos para parar el tren le pasó por encima, resultando luego ser una persona cuya cabeza no vió. El jefe de la estación de Mameyes declaró que en ella no se encienden luces por la noche y que en el sitio donde se dice hay un cruce existe un aviso prohibiendo el paso. Otros testigos no se refieren al hecho de la muerte de Correa. De esa prueba se concluye, entre otras cosas, que la muerte ocurrió cerca de la estación de Mameyes en la parte más cercana a Fajardo, que posiblemente es el este, y que al otro lado de ella, oeste, fué visto el cuerpo por los empleados del tren a la una de la madrugada.

Alega la apelante en los números primero, segundo y tercero de su recurso que la corte sentenciadora cometió error al declarar probado por los demandantes que en el sitio y hora del accidente el tren de la demandada caminaba a una velocidad de ochenta kilómetros por hora: que llevaba cuarenta o cincuenta vagones vacíos delante de la locomotora y que no llevaba luces encendidas; así como por haber declarado que fué negligente porque el tren tenía la obligación de reducir la velocidad en el sitio del suceso; y al declarar con lugar la demanda no habiéndose establecido por la demandante la negligencia alegada.

La declaración del único testigo presencial del accidente, que fué creída por la corte inferior, convence de que el tren llegó al sitio del suceso de súbito, sin ser visto ni oído y a mucha velocidad, sin tocar el silbato de alarma, con treinta y tres vagones delante de la locomotora y sin luces, pues aunque llevase encendidos los focos delanteros éstos no podrían alumbrar por delante el camino, como lo demuestra el hecho de que cuando se llevan los vagones por delante, lo que ocurre frecuentemente, se lleva en el primer vagón un pequeño farol, y que el tren no redujo su marcha ni paró en la estación de Mameyes. Los empleados de la demandada no vieron a Correa en la vía ni cerca de ella ni a González, que estaba a tres o cuatro metros de distancia de la misma. Esas conclusiones

de hecho nos convencen de que hubo negligencia por parte de los empleados de la demandada, pues al cruzar el expresado camino público debieron avisar su llegada con el silbato o con la campana, pues podían esperar que encontrasen transeúntes en el camino, con mayor razón cuanto que no había barreras que impidieran el paso ni luces que avisaran la proximidad de un tren, y que llevaban un gran número de vagones delante de la locomotora. Por consiguiente, los empleados de la demandada fueron negligentes. *Ferrer e Hijo* v. *American Railroad Co.*, 39 D.P.R. 40.

■ Es cierto que Correa conocía la existencia de la vía férrea en aquel sitio pero como no existe prueba de cómo entró en la vía hay que suponer que lo hizo con el debido cuidado, porque no vió el tren ni oyó su aproximación, como le ocurrió a Ángel González, por lo que es aplicable la doctrina del caso de *Baltimore & Potomac R. R. Co.* v. *Landrigan*, 191 U. S. 461, citado en el caso de Ferrer, supra. Así queda resuelto el cuarto motivo de la apelación.

Respecto del quinto diremos que con la prueba de los demandantes y con la de algunos testigos de la demandada quedó demostrado que en aquel sitio hay un camino que es usado por el público en general.

El sexto y último motivo de error alegado tampoco existe, porque aunque el sitio donde ocurrió la muerte de Correa sea propiedad de la demandada, lo cierto es que allí existe un camino que es usado por el público y que se ha demostrado que la negligencia de los empleados de la demandada fué la causante de la muerte de Correa.

■ Pasemos ahora a la apelación de los demandantes, fundada en dos motivos, a saber, en que la condena debió ser por mayor cantidad y en que debieron imponerse las costas a la demandada.

Correa era un hombre de treinta y cuatro años de edad, que ganaba nueve dólares semanales como boyero. En apoyo del primer motivo del recurso citan los apelantes varias sentencias de tribunales de los Estados Unidos en que se han

concedido cantidades mayores de $3,000 en casos semejantes al presente, pero no pueden servirnos de guía porque la tendencia general de los veredictos de las cortes insulares ha sido muy conservadora en materia de cuantía por las indemnizaciones, teniendo en cuenta quizás que este país no es rico. Además, la indemnización concedida nos parece suficiente porque capitalizada al tipo de 12% anual permitido por nuestras leyes daría una renta de $30 mensuales, que es casi la cantidad que ganaba al mes Correa cuando trabajaba. Opinamos que la cantidad concedida no es claramente inadecuada o improcedente.

█ █ Con respecto al error alegado por no haber sido condenada en costas la demandada no podemos decir que la corte inferior abusara del poder discrecional que la ley le concede para imponerlas, pues el solo hecho de que la demandada se opusiera a la demanda y que se haya dictado sentencia en su contra no es bastante por sí solo para declarar que fué temeraria en su oposición a la demanda, pues aunque la demanda estaba jurada por el abogado no lo fué por conocimiento personal de los hechos de ella sino por información de otra persona; y la prueba en el juicio demostró que los empleados de la demandada sólo sabían que al regresar para Fajardo vieron a la una de la mañana un bulto en la vía férrea, que luego resultó ser el cuerpo de Correa, y que trataron de evitar pasarle por encima, no habiéndose dado cuenta de que horas antes el tren había matado a Correa, por lo que la demandada estuvo justificada aparentemente en oponerse a la demanda. Además, la diferencia entre la cantidad pedida como indemnización y la concedida por la sentencia es tan grande que no debemos declarar que la corte inferior abusara de su poder discrecional al no imponer las costas a la demandada. *Sucn. del Toro* v. *Zambrana*, 27 D.P.R. 492: *Martínez* v. *Padilla*, 19 D.P.R. 582.

*La sentencia apelada debe ser confirmada.*

El Juez Asociado Señor Córdova Dávila no intervino.