Miranda, Demandante, Apelada y Apelante, *v.* The Porto Rico Railway, Light & Power Company, Demandada, Apelante y Apelada.

Apelación procedente de la Corte de Distrito de San Juan, Sección Primera, en pleito sobre daños y perjuicios.

No. 2550.—Resuelto en abril 17, 1923.

Daños y Perjuicios—Negligencia—Alegación.—En todo caso que envuelve negligencia procesable hay tres elementos esenciales: la existencia de un deber por parte del demandado de proteger al demandante del daño de que se queja; un incumplimiento por el demandado en cumplir con ese deber, y un daño ocasionado al demandante por tal incumplimiento. La omisión de cualquiera de estos elementos en las alegaciones de la demanda hace que ésta sea defectuosa. En este caso la demanda no revela la existencia de ninguna clase de deber por parte de la demandada para con la demandante.

Id. — Id. — Excepción Previa — Apelación. — La omisión en alegar específicamente el deber de la demandada y su incumplimiento debe utilizarse por excepción previa y la objeción no puede hacerse por primera vez en apelación; pero no puede exigirse a un demandado que excepciona la demanda por no aducir hechos suficientes para determinar una causa de acción, el deber de

especificar como fundamentos de excepción previa los elementos esenciales omitidos.

ID. — ID. — PRUEBA. — El hecho declarado probado de que la demandante no fué culpable de negligencia contributoria, no obstante toda la prueba en contrario, y que el accidente ocurrió en una calle pública mientras se encontraba la demandante en lo que se conocía por acera de dicha calle, a pesar de la ausencia total de prueba en este sentido, impide la confirmación de la sentencia, independientemente de toda cuestión sobre la suficiencia de la demanda.

Los hechos están expresados en la opinión.

Abogados de la apelada apelante: Sres. *Guerra Mondragón* y *Soldevila.*

Abogados de la apelante apelada: Sres. *J. H. Brown, P. Amado Rivera* y *M. Acosta Velarde.*

EL JUEZ ASOCIADO SR. HUTCHISON, emitió la opinión del tribunal.

En este caso la demanda alega en substancia lo siguiente:

"Que la demandada es una corporación constituída bajo las leyes de Puerto Rico y se dedica al transporte de pasajeros, por medio de tranvías eléctricos, entre San Juan, Santurce y Río Piedras, con oficina principal abierta en esta ciudad de San Juan.

"Que el día 7 de octubre de 1918, como a las ocho y media de la mañana, venía del Parque para San Juan y guiado por el motorista Nicasio Feliciano, placa 145, que era entonces empleado de la corporación demandada, que a la vez se hallaba en el desempeño corriente de su empleo, el carro eléctrico No. 32, perteneciente a la corporación demandada, bajando de la parada 20 a la 19 a gran velocidad por la pendiente que existe entre esas dos paradas, a pesar del rótulo 'Reduzca la velocidad,' que está fijado a un poste que se encuentra a un par de metros del lugar en que ocurrió la desgracia; que el motorista venía sin tocar campana, por lo que la demandante fué arrollada por dicho carro, sufriendo, a consecuencia de tal accidente, la rotura de la tibia derecha por lo cual fué necesario amputarle la pierna a la altura de la rodilla el mismo día 7 de octubre de 1918, a eso de las 10 de la mañana. Y alega además la demandante, que este hecho fué debido a la negligencia e imprudente temeridad del motorista citado."

A los nueve meses después de formular la demandada la excepción previa de que la demanda no aduce hechos sufi-

cientes para constituir una causa de acción, fué "debidamente argumentada" la cuestión, habiéndose reservado la corte su resolución y dictándola finalmente en sentido adverso a la demandada. Esta resolución constituye la materia objeto del primer señalamiento de error.

"El derecho a establecer una acción depende de que exista lo que se denomina causa de acción, la cual generalmente se considera que envuelve la combinación de un derecho por parte del demandante y la violación de tal derecho por el demandado." 1 C. J. pág. 951.

"En todo caso que envuelve negligencia procesable hay necesariamente tres elementos esenciales: (1) La existencia de un deber por parte del demandado de proteger al demandante del daño del cual se queja; (2) Un incumplimiento por el demandado en cumplir ese deber; y (3) Un daño causado al demandante debido a tal incumplimiento; y la falta de cualquiera de estos elementos hace que la demanda sea defectuosa." Nota al caso de *King* v. *Oregon Short Line R. Co.*, 59 L. R. A. 209, en la página 214.

Tales verdades, evidentes en sí mismas, por comunes que sean, no deben ser enteramente desatendidas por las cortes sentenciadoras.

Claramente que la demanda a que se hace referencia en primer término no revela la existencia de ningún deber por parte de la demandada para con la demandante, ya de reducir la velocidad del carro, o de tocar la campana. Posiblemente podríamos presumir que la demandante era un pasajero, y que siendo el objeto del aviso de reducir la velocidad el proteger a los pasajeros, se hizo esto en beneficio de la demandante, con excepción de que tal teoría resulta contradicha en cierto modo por el alegado incumplimiento en tocar la campana y prácticamente excluída por la ulterior manifestación de haber sido la demandante arrollada por el carro. Por otra parte, a no ser que debamos tomar conocimiento judicial de la situación topográfica de las paradas que por sus números se mencionan en la demanda, así como de las condiciones físicas en los alrededores de la localidad en particular que así se trata de identificar, nada existe en

la demanda que siquiera indique que el accidente tuvo lugar
en un sitio donde había de preverse razonablemente la pre
sencia de la demandante, o de alguna otra persona que estu
viera muy cerca de la vía o paso de la demandada; y que
mediante razonable cuidado por parte del motorista pudo ser
observada en tiempo con el fin de evitar el accidente.   La im
portancia de estas observaciones se verá con mayor claridad
tal vez cuando pasemos a considerar la prueba y los hechos
declarados probados por el juez sentenciador.

Pero insiste el abogado de la apelada en que no habiendo
la demandada especificado expresamente en la excepción pre-
via la omisión de la demandante en alegar cualquier hecho
que indique la existencia de un deber por parte de la deman-
dada hacia la demandante, esta cuestión no puede ser le-
vantada en apelación, citando el tomo 29 de Cyc., pág. 567.
Lo que guarda más semejanza con esta proposición en el
texto que de tal modo se cita, es la declaración que sigue
(bastardilla nuestra) :

"La omisión en alegar *específicamente* el deber del demandado
y el incumplimiento deben alegarse por excepción previa y la ob-
jeción no puede hacerse por primera vez en la corte de apelación."

Y examinando el único caso que en la nota se menciona,
o sea, el de *Ella* v. *Boyce,* 70 N. W. 1106, encontramos que
lo que dijo la corte de Michigan fué lo siguiente (bartardilla
nuestra) :

"Por otra parte, se sostiene por el demandante que el hecho de
no alegarse en la demanda *formalmente* el incumplimiento de un
deber y su abandono se levanta por primera vez; que de poder utili-
zarse esta defensa debe promoverse por excepción previa.   Creemos
que los hechos relacionados en la demanda *implican claramente* un
deber por parte del demandado de no haber llevado de tal modo su
cable a través de la línea del tranvía que pueda causar daño a las
personas que la usan; y si la demandada trató de aprovecharse *de
tal defecto* de la demanda, *por no alegarse específicamente* el deber
y su incumplimiento, debió haberlo hecho así por excepción previa.
Esa cuestión no puede ser levantada por primera vez en esta corte."

La contestación a todo aquello del alegato de la apelada en que se pretende ir más allá de esto y exigir a un demandado que excepciona la demanda por no aducir hechos suficientes para determinar una causa de acción, el deber de especificar como fundamentos de excepción previa las omisiones alega-das, puede verse en el tomo 31 de Cyc., en la página 281 *j.*, y en el Código de Enjuiciamiento Civil de Kerr, 2ª. edición, parte 1, sec. 431, página 880, párrafos 21 y siguientes.

Nosotros mismos hemos sido bastante liberales en consi-derar demandas como enmendadas para ajustarlas a la prueba en ciertas condiciones y no se nos pasa desapercibido ahora el hecho de que:

"También se ha resuelto que aun cuando una demanda esté su-jeta a excepción previa por no alegarse en ella un hecho material que es esencial para que pueda dictarse sentencia favorable, y se declara sin lugar una excepción previa, no se revocará una sen-tencia a favor del demandante en apelación cuando ésta parece ser correcta y el hecho omitido fué la principal cuestión en controversia en el juicio; pero la corte considerará la demanda como enmen-dada para ajustarla a la prueba de ser necesario para sostener la sentencia." Nota al caso de *Ellinghouse* v. *Ajax Live Stock Co.*, L. R. A. 1916 D, pág. 836, en la página 859.

No es necesario que nos detengamos ahora con el fin de indagar hasta qué punto han llegado otras cortes para dar mayor alcance a la regla en circunstancias excepcio-nales, con el objeto de que comprenda la omisión absoluta en expresar ya directamente o por razonable deducción el elemento más vital y fundamental del derecho de acción, no obstante la oportuna interposición de una excepción previa por no aducirse hechos suficientes. Puede razonablemente asumirse que cualquiera justificación que pueda haber para semejante aplicación de la doctrina referente a enmiendas en apelación, se hallaría a falta de algún otro error que pueda motivar la revocación en unión de una clara convic-ción de que se habían alcanzado los fines de la justicia sin

ocasionar grave perjuicio a ningún derecho substancial. Será suficiente con decir, por tanto, que en el presente caso no podemos llegar a tal conclusión.

La sentencia de la corte inferior descansa en los siguientes hechos probados:

"Del conjunto de la prueba practicada y de la inspección ocular creemos que el día 7 de octubre de 1918, y como a las 8:00 a. m., la demandante salió de la casa de la Sra. Barleta, de dar clase de taquigrafía. La casa de la Sra. Barleta se halla situada entre las paradas 19 y 20, tiene un pequeño jardín y la verja llega muy cerca de la vía del trolley.

"Por entre la vía del trolley y la verja queda un pequeño espacio que tendrá un poco más de un metro y cuyo espacio se reduce al pasar un trolley, por ser éste más ancho que el espacio que media entre los dos rieles de la vía.

"También estima probado que la demandante es mayor de edad, huérfana de padre e hija de madre pobre, y que el día 7 de octubre de 1918, alrededor de las 8:00 a. m., entre las paradas 19 y 20, un carro eléctrico arrolló a la demandante derribándola al suelo y fracturándole la pierna derecha, y que a causa de este accidente la demandante hubo de ser operada, poco tiempo después de lo ocurrido, en el "Puerto Rico Sanatorium," por el Dr. Belaval, quien le amputó la pierna derecha un poco más arriba de la rodilla, y que el accidente vino por causa de la negligencia del motorista de la demandada, consistiendo dicha negligencia en no haber tocado la campana, ni parado el carro a tiempo. El motorista Nicasio Feliciano no venía atento a la vía, no miraba hacia adelante, y la corte cree que si el motorista hubiese cumplido con su deber, hubiera visto a la demandante y hubiera evitado el accidente, pues habría tocado la campana y hubiera podido parar el carro ya que la Corte acepta que el carro venía sin corriente y a velocidad mínima.

"La demandante, en la época que ocurrió el accidente, acababa de terminar su curso científico en la Alta Escuela de Yauco, y emprendía estudios de taquigrafía a fin de librar su sustento y de sostener a su madre y a una hermana menor en lo futuro.

"La demandante sufrió dolores físicos intensos, no tan sólo en el momento del accidente, sí que también antes y después de la operación a que fué sometida, y que también ha sufrido dolores morales al verse privada de una manera permanente de una extremidad im-

portante de su cuerpo, y que se ve ahora obligada a vivir recluída en su casa dedicada a labores domésticas, habiendo el accidente disminuído de una manera notable su capacidad para el trabajo.

"El sitio en que ocurrió el accidente es una calle pública, y que el callejón de autos es usado por el público y substituye a las aceras que deberían existir en dicho sitio. El citado callejón si bien es estrecho, no lo es tanto que una persona no pueda andar por él y permanecer en él sin peligro para su persona en momentos en que un carro eléctrico esté pasando por la vía.

"La demandante no fué culpable de negligencia contributoria."

Además del señalamiento ya discutido la apelante insiste en que:

"II. La corte erró al declarar que el sitio del accidente es una calle pública.

"III. La corte incurrió en error al declarar que el motorista, empleado de la demandada, fué culpable de negligencia que era causa próxima del accidente.

"IV. La corte erró al declarar que la demandante no fué culpable de negligencia contribuyente.

"V. La corte incurrió en error al dictar sentencia a favor de la demandante porque según el peso y preponderancia de la prueba no fué culpable de negligencia que medió como causa próxima del accidente el motorista empleado de la demandada y según el claro peso y preponderancia de la prueba, la demandante fué culpable de negligencia que contribuyó como causa próxima al accidente."

No existe prueba alguna en apoyo de la conclusión de que el sitio donde el accidente tuvo lugar es una calle pública y que el estrecho callejón usado por la demandante substituye a la acera que debía existir en dicho sitio. Los autos están tan desprovistos de toda prueba, como lo está la demanda de cualquier alegación en este sentido.

Y a esto no se contesta con decir que el juez sentenciador hizo una inspección ocular del sitio del accidente, por la razón de que por las cuatro fotografías que fueron tomadas el día del suceso y presentadas como prueba de la demandante podemos ver prácticamente todo lo que pudo haber

visto la corte sentenciadora en lo que respecta a este aspecto del caso.

Estas fotografías muestran lo que parece ser un camino público o tal vez una calle, paralela a la vía y al cimiento del tren. Este cimiento se levanta algo del nivel de la calle, o por lo menos muy visiblemente sobre el nivel del borde exterior del camino o de la cuneta. Los rieles en cambio sobresalen a la superficie del cimiento del tren que está cubierto de yerba y otra vegetación tanto dentro como en cierta distancia fuera de la vía. En los sitios donde el cimiento no está tan cubierto por la yerba las superficies superiores de los durmientes son visibles aunque prácticamente están al nivel del terreno. La línea de separación entre esta faja de vegetación y la calle, o por lo menos la parte de ésta afirmada o por donde el público pasa, está muy claramente definida y no puede dar lugar a equivocación.

Hay un tablado entre los rieles a intervalos, y puentecitos o pasos de concreto u otro material sin unión pueden verse que se levantan de la calle a la superficie de los rieles en estos cruces que al parecer son de particulares, pero no se ven calles que cruzan en la inmediata vecindad. Pueden verse viandantes a ambos lados de la parte del camino por donde se anda. En una de las fotografías el número de estas personas parece mayor en el lado contrario a la vía, pero en ninguna de las fotografías se ve a ninguna persona pasando por la faja de terreno comprendida entre los rieles de la vía y el frente de las verjas contiguas.

También es cierto que estas fotografías muestran la existencia de un paso estrecho o faja de terreno simplemente entre la vía y la verja a que se hace referencia en los hechos declarados probados por la corte. Podemos aceptar en pro del argumento que la corte sentenciadora pudo haber asumido que esta faja de terreno no había sido hecha con una azada u otro instrumento semejante para algún fin que no fuera la conveniencia del público, y que de haberse formado

por el tránsito entonces que no había sido gastada por la pisada del ganado o de los reparadores de la línea del telégrafo, teléfono, o del carro eléctrico, u otros empleados de la demandada o compañías que usan los postes que aparecen en las fotografías, sino por el uso público general y más o menos continuado. Entonces tal vez la corte sentenciadora no hubiera estado enteramente injustificada en suponer que la compañía tenía conocimiento de tal uso y por tanto que tuvo motivos suficientes para prever la presencia de la demandante en el sitio donde parte de la prueba tiende a acreditar que ocurrió el accidente. Pero decir que esto es equivalente a la escueta proposición de que este camino estrecho forma parte de una calle pública y que en efecto substituye a lo que debe ser una acera, sería la "más fuerte y manifiesta apreciación errónea de un hecho."

Podemos de paso agregar que la misma demandante se expresa en estos términos:

"Yo siempre daba clase en la puerta a la salida del balcón y veía que por ahí pasaba todo el mundo para ir a la capilla y yo también había usado otras veces ese sitio."

Esta declaración, sin embargo, momentos después pierde parte de su fuerza por virtud de la manifestación que sigue:

"Yo daba mi lección en la sala de la casa, frente a la puerta. La puerta quedaba abierta. Sentía los carros cuando pasaban; no los veía porque estaba de espalda; yo daba clase de espalda para afuera."

También dice la señorita Barleta que ella utilizaba este camino para ir a la capilla, que da frente a los terrenos del Instituto y que ella había visto a otras personas pasar por ese camino.

Pero toda vez que la sentencia de la corte inferior no se funda en ninguna teoría que las declaraciones de los tes-

tigos pudieran tratar de sugerir, no es necesario, que nos ocupemos de este aspecto del caso.

No sólo no hay en los autos base alguna para decir que la demandante no fué culpable de negligencia contributoria, sino que toda la prueba indica de modo concluyente lo contrario.

El hecho de si el motorista mediante el ejercicio de cuidado razonable pudo o no haber evitado el accidente a pesar de la negligencia contributoria de la demandante, es una cuestión que no fué considerada en absoluto por la corte inferior y no es preciso que ahora se resuelva.

El hecho declarado probado por la corte de no haber sido culpable la demandante de negligencia contributoria, no obstante toda la prueba en contrario, y el hecho declarado probado por la corte de que el accidente tuvo lugar en una calle pública mientras la demandante estaba en una acera de la misma o en lo que substituye a dicha acera, a pesar de la carencia absoluta de prueba en este sentido, impide que pueda confirmarse la sentencia apelada, independientemente de toda cuestión sobre la suficiencia de la demanda.

Con referencia a la cuestión de negligencia por parte del motorista y la relación causal, de existir alguna, entre tal negligencia y los daños que se alega fueron ocasionados, la demandada tiene por lo menos derecho a una decisión basada en la prueba presentada en este sentido, considerada a la luz de la ley aplicable a los hechos establecidos en el juicio en contraposición a las erróneas conclusiones a que acabamos de referirnos. No habiendo la corte inferior llegado a este resultado en la forma que acaba de indicarse, no podemos decir que la demandada no ha sido perjudicada en algún derecho substancial.

Como regla general, por supuesto, todas las cuestiones de hecho deben ser resueltas primeramente por el juez sentenciador después de oir las declaraciones según salen de labios de los testigos al ser puestos a declarar. Nos abs-

tenemos, por tanto, en resolver las cuestiones que se levantan en los restantes señalamientos de error.

Debe revocarse la sentencia apelada, debiendo devolverse las actuaciones, concediéndose al demandante permiso para enmendar su demanda dentro del término de diez días a contar de la fecha en que se registre la sentencia de esta corte en la corte inferior, y para ulteriores procedimientos que no sean incompatibles con esta opinión.

> *Revocada la sentencia apelada y devuelto el caso para que se enmiende la demanda.*

Jueces concurrentes: Sres. Presidente del Toro y Asociados Wolf, Aldrey y Franco Soto.