FLORA RODRÍGUEZ, conocida por CLORINDA RODRÍGUEZ, por sí y como madre de sus hijos menores AURELIA, JULIANA, MARIANO y ALEJANDRINA VÉLEZ Y RODRÍGUEZ, demandantes y apelados, *v.* THE AMERICAN RAILROAD COMPANY OF PORTO RICO, demandada y apelante.

No. 5213.—*Sometido:* Junio 23, 1931. *Resuelto:* Mayo 17, 1932.

*M. Acosta Velarde,* abogado de la apelante; *Pascasio Fajardo Martínez,* abogado de los apelados.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

El presente es un caso de daños y perjuicios en el que se dictó sentencia favorable a tres de los cinco demandantes, Clorinda Rodríguez y Aurelia y Juliana Vélez Rodríguez, por la suma de cuatro mil dólares y las costas. La demanda se desestimó en cuanto a los otros dos demandantes Mariano y Alejandrina Vélez por no haberse probado sa-

tisfactoriamente su condición de hijos de Carlos Vélez, la persona que falleció con motivo del accidente que dió origen a la reclamación.

No conforme con la sentencia, la parte demandada interpuso el presente recurso de apelación, señalando en su alegato la comisión de siete errores, cometidos a su juicio, por la corte sentenciadora, 1, al desestimar su excepción previa de falta de hechos; 2, al dictar sentencia contraria a las alegaciones y a las pruebas; 3, al fallar que la demandada fué negligente; 4, al dictar una sentencia contraria a la evidencia y al derecho; 5, al declarar que el causante de los demandantes no fué culpable de negligencia contributoria; 6, al dictar sentencia contraria al peso y preponderancia de la prueba, y 7, al estimar que la prueba demostró la temeridad de la demandada al defenderse imponiéndole el pago de las costas, sin excluir honorarios de abogado.

Como puede verse, la cuestión se reduce al examen de la demanda, para ver si aduce hechos suficientes para determinar la acción ejercitada, y al estudio de la prueba, para concluir si sostiene o no la sentencia, todo desde luego a la luz de la ley y la jurisprudencia aplicables.

■ Argumentando la primera cuestión empieza la apelante invocando lo resuelto por esta Corte Suprema en el caso de *Miranda* v. *P. R. Railway Light & Power Co.,* 31 D.P.R. 778, con respecto a que en todo caso que envuelva negligencia procesable, es necesario que concurran tres elementos esenciales, a saber: 1, la existencia de un deber por parte del demandado de proteger al demandante del daño de que se queja; 2, la falta de cumplimiento por parte del demandado de ese deber, y 3, un daño ocasionado al demandante por tal incumplimiento, y sostiene que la demanda es defectuosa porque no revela la existencia de ninguna clase de deber por parte de la demandada para con el causante de los demandantes. Continúa así:

"Los hechos PRIMERO y SEGUNDO de la demanda enmendada se re-

fieren a la capacidad de las partes. En el hecho Tercero se alega que la demandada fabricó una Estación para tomar y descargar pasajeros y carga en la Ciudad de Mayagüez, conectando esta Estación con una calle municipal con un callejón de entrada por el lado norte de dicha Estación, y se alegó en dicho hecho tercero, lo siguiente:

" '. . . la cual estación está fabricada por la demandada en tal forma que tiene acceso de entrada y salida a la misma por su lado Norte que es la terminación del relacionado callejón que le conecta con la calle de McKinley y además con otro callejón o pasadizo que queda por el punto Este, o sea, la parte de atrás de la misma.'

"Los hechos cuarto, quinto y sexto de la demanda enmendada, copiados a la letra, dicen:

" 'Cuarto: Que por el indicado callejón o pasadizo de la parte atrás de dicha estación, la demandada por medio de sus empleados, agentes o representantes, voluntaria y negligentemente instaló y clavó en la tierra cuatro postes de hierro de una altura como de dos pies y medio cada uno y a una distancia como de dos metros uno de otro, los cuales sostenía y tenía instalados en la fecha del accidente que más adelante se relacionará justamente a la terminación de la estación aludida y en terrenos de su pertenencia y por cuyo sitio entraban y salían los viandantes a dicha estación.

" 'Quinto: Que Carlos Vélez y Almodóvar, esposo de la demandante Clorinda Rodríguez y padre de los otros cuatro demandantes que se designan en el título de esta demanda allá en o alrededor del día 19 de marzo del corriente año de 1927, siendo entre once y doce de la noche de dicho día, en momentos en que dicho Carlos Vélez y Almodóvar salía de la nombrada estación por dicho callejón o pasadizo que la demandada voluntariamente sostiene para el tránsio público, sin luz alguna, ni señales de aviso, chocó y se dió, mientras caminaba a pie, con el segundo de dichos postes en los testículos y estómago un fuerte golpe con la parte superior del mismo que le ocasionó que se le brotase una hernia y se mutilara los testículos, como resultado de lo cual, pocos días después dicho Carlos Vélez y Almodóvar, fué necesario someterse como se sometió, en el Hospital Municipal de esta Ciudad, a una operación quirúrgica de una y otra dolencia, como resultado de todo lo que falleció a los pocos días.

" 'Sexto: Alegan los demandantes que por los empleados de la demandada no se mantenía alumbrada dicha salida de la parte de

atrás de la estación, ni mantenían en dicho momento del accidente signo o señal de peligro de naturaleza alguna.'

"Al leer las alegaciones de la demanda nos preguntamos ¿qué relaciones existían entre el causante de los demandantes y la demandada? A esta pregunta es forzoso responder que no existía relación alguna. La demanda enmendada lo único que dice es que Carlos Vélez causante de los demandantes, entre once y doce de la noche del día 19 de marzo de 1927 salía de la estación, etc., etc. En la demanda no se dice que en aquellos momentos o inmediatamente antes hubiera llegado a dicha estación un tren ni se alega que el Vélez fuera un pasajero ni que fuera un empleado de la demandada, ni que fuera un parroquiano de la demandada. Lo único que se alega es que él salía de la estación. La demanda está huérfana de toda alegación que revele la existencia de un deber por parte de la demandada para con el demandante.

"Es cierto que en el hecho tercero se alega que en el punto Este de la estación, 'o sea, en la parte de atrás de la misma, dicha estación tiene conexión con un callejón o pasadizo, pero no se alega que dicho callejón o pasadizo se utilizaba por los pasajeros o por los parroquianos o personas que tienen negocios o relaciones contractuales con la demandada o que dicho callejón o pasadizo esté abierto para uso público o para el uso de los parroquianos de la demandada. El mero hecho de la existencia de un callejón o pasadizo no implica el derecho para que sea usado por cualquier persona y la circunstancia de que la estación por su parte de atrás tenga acceso a dicho callejón o pasadizo no implica el derecho a ser utilizado o usado por cualquier persona, ya que lo único que eso demuestra es que de la estación se puede ir o pasar al dicho callejón o pasadizo.''

Sigue la apelante argumentando extensamente y citando copiosa jurisprudencia en apoyo de sus conclusiones. La parte apelada en su alegato la contesta hábil y extensamente también y con lujo de citas. Es éste un caso en el que los abogados de las partes han trabajado con gran entusiasmo y persistencia. Su estudio y resolución no resulta fácil, en verdad.

Analizada la demanda por sí sola presenta a nuestro juicio un caso débil en cuanto al deber de la demandada para con el causante de los demandantes, pero no puede sostenerse que deje en absoluto de presentarlo.

Se alega en ella que la demandada está autorizada para explotar y explota una línea de ferrocarriles en la Isla para la conducción de carga y pasajeros y que en la ciudad de Mayagüez fabricó una estación para tomar y descargar pasajeros y carga a alguna distancia de la calle McKinley y la conectó con esa calle por medio de un callejón. Se alega además que por medio de sus empleados clavó postes de hierro por un sitio en que entraban y salían los viandantes a la estación, sitio "que la demandada voluntariamente sostiene para el tránsito público", y eso no obstante lo dejó a obscuras de noche, sin señal de aviso, y que en la noche de autos Carlos Vélez, mientras caminaba a pie por el sitio indicado, chocó con el segundo de dichos postes, y recibió el golpe que le ocasionó la muerte.

Es cierto que la demanda hubiera presentado un caso más fuerte si hubiera alegado que Vélez era un pasajero que se dirigía a la estación para tomar el tren, pero creemos que aun como está redactada revela la existencia del deber de la demandada para con el demandante, porque fué la demandada la que voluntariamente abrió el callejón al público y la que clavó los postes que hacían el tránsito peligroso cuando no había luz que permitiera distinguirlos. En tal caso, no es necesario que exista ley u ordenanza que expresamente imponga el deber de mantener luz encendida durante las horas de la noche; tal deber surge del principio general que regula las relaciones entre los hombres. Si una persona invita a otra a pasar por un sitio, no debe colocar en aquel sitio algo que pueda injuriar al invitado.

La acción que se ejercita en este caso se basa en los preceptos generales contenidos en los artículos 1802 y 1803 del Código Civil, Ed. 1930, y en el caso de *Marrero* v. *Am. Railroad Co.*, 33 D.P.R. 207, se decidió que:

"No es necesario que en la demanda se alegue la ley, reglamento, jurisprudencia o costumbre que imponga el deber del demandado para

con el demandante, si de los hechos surge la existencia de tal deber. Tampoco que se expongan los hechos en todos sus detalles. Estos pueden establecerse luego por la prueba.''

■ ■ Además se ha resuelto por la Corte Suprema de los Estados Unidos que:

"Si bien una compañía ferroviaria no está obligada a ejercer el mismo grado de circunspección hacia meros extraños que se hallan ilegalmente dentro de sus propiedades, que hacia los pasajeros por ella transportados, sin embargo, no está exenta de responsabilidad para con tales extraños por las lesiones provenientes de su negligencia o de sus actos torticeros.'' *Railroad Company* v. *Stout*, 84 U. S. 657.

Y, por último, parece conveniente agregar que la prueba mostró un caso más fuerte que la demanda, pues se aportaron declaraciones que se admitieron sin objeción para demostrar que Vélez era un pasajero que se encaminaba a la estación para tomar el tren, y esta corte ha dicho:

"Nosotros mismos hemos sido bastante liberales en considerar demandas como enmendadas para ajustarlas a la prueba en ciertas condiciones y no se nos pasa desapercibido ahora el hecho de que:

" 'También se ha resuelto que aun cuando una demanda esté sujeta a excepción previa por no alegarse en ella un hecho material que es esencial para que pueda dictarse sentencia favorable, y se declara sin lugar una excepción previa, no se revocará una sentencia a favor del demandante en apelación cuando ésta parece ser correcta y el hecho omitido fué la principal cuestión en controversia en el juicio; pero la corte considerará la demanda como enmendada para ajustarla a la prueba de ser necesario para sostener la sentencia.' Nota al caso de Ellinghouse v. Ajax Live Stock Co., L.R.A. 1916 D, pág. 836, en la página 859.'' *Miranda* v. *The P. R. Ry. Lt. & P. Co.*, 31 D.P.R. 778, 782.

Véase también el caso de *El Pueblo* v. *Sucesión Valdés*, 31 D.P.R. 223.

Y esto nos lleva al estudio de los restantes errores relacionados todos con la prueba.

A virtud de la practicada en el juicio, la corte sentenciadora declaró probados los siguientes hechos:

"Que la demandada es una entidad de servicio público que se dedica en esta Isla a explotar una línea de ferrocarril para la conducción de carga y pasajeros; teniendo instalada una vía férrea que cruza la Ciudad de Mayagüez de Norte a Sud y que asimismo la demandada tiene instalada y usufructúa una estación en la Ciudad de Mayagüez que se conoce por 'Estación Pueblo', la cual ha venido utilizando desde hace años para todas sus actividades y especialmente para dejar y tomar pasajeros en sus trenes que funcionan regular y diariamente.

"Que esa estación se encuentra fabricada en tal forma que el público en general, ha venido teniendo entrada y salida a la misma por su parte del frente que da a la vía del ferrocarril y por su parte de atrás, por la cual existe un callejón o pasadizo por el que la demandada ha fabricado una acera para dar ingreso y salida al público en general y que por uno y otro lado las personas que llevan transacciones con la demandada entran y salen a dicha estación.

"Que la demandante Clorinda Rodríguez, conocida por Flora Rodríguez era casada con Carlos Vélez Almodóvar y que en ese matrimonio procrearon dos hijas llamadas Aurelia y Juliana, conocida esta última por Julia, de apellidos Vélez y Rodríguez, las cuales son menores de edad y se encuentran bajo la patria potestad de su indicada madre.

"Que dicho Carlos Vélez Almodóvar allá por uno de los días del mes de mayo del año de 1929, siendo de noche, en momentos en que transitaba por la parte de atrás de dicha estación a pie y por la acera que la demandada había construído por este lado anexa al dicho edificio para transitar el público en general y en terrenos usufructuados por ella, debido a encontrarse dicho pasadizo y acera sin luz que le alumbrara, ni señal alguna de peligro, chocó dicho Carlos Vélez Almodóvar al apearse de la dicha acera a la terminación de la misma que ocupa toda la extensión de dicha estación con uno de los postes de hierro que se encontraban en ese sitio colocados, y que uno de ellos fué puesto justamente a la terminación de la dicha acera y de una altura como de tres pies y que la demandada por sus empleados había colocado en el sitio indicado y el cual poste se encontraba con relación a otros que impedían el tránsito de toda clase de vehículos por dicho pasadizo, pero no impedían el tránsito de viandantes, los que podían libre y cómodamente transitar por dicho pasadizo; que como consecuencia del choque con el poste en relación,

dicho Carlos Vélez Almodóvar sufrió un fuerte golpe en su estómago y testículos con la parte superior del mismo que le ocasionó se le brotase una hernia y se le mutilaran los intestinos, como resultado de lo que requirió una operación quirúrgica que ocasionó su muerte pocos días después.

"Que en la noche y hora del accidente dicho Carlos Vélez y Almodóvar y algún tiempo antes de pasar el tren por esta Ciudad de Mayagüez hacia San Juan, se dirigía caminando en la forma acostumbrada por la acera que la demandada había fabricado en su parte de atrás de la estación y que en esos momentos la demandada negligentemente sostenía y tenía sin luz ni signo alguno demostrativo del poste que a su terminación existía, a dicha estación de la demandada con el fin de obtener un ticket de una cama de dicho tren para ir a San Juan en el mismo.

"Que dicho accidente aconteció en terrenos usufructuados y bajo el control de la demandada y que dicho poste que ocasionó el daño en relación y los demás fueron colocados por empleados de la misma y que dicho finado Carlos Vélez Almodóvar al transitar por el indicado sitio no era un intruso y sí un invitado implícito de la demandada y que entonces y allí iba a la estación a obtener un ticket de una cama para trasladarse a la Ciudad de San Juan y que como tal la demandada estaba y venía obligada a guardar para con él aquel grado de cuidado razonable para evitar perjuicio en su persona y que el accidente en cuestión se debió sólo y exclusivamente a la negligencia de los empleados de la demandada al sostener un sitio por donde el público en general acostumbraba a entrar y salir a la estación aludida en horas de noche a oscuras y sin aviso alguno de la existencia de un poste colocado en sitio en que la demandada voluntariamente preparó para que el público en general entrara y saliera a dicha estación y por el cual lógicamente tenían los empleados de la demandada que presumir que los viandantes estaban factibles a recibir lesiones con dicha obstrucción.

"De la inspección ocular que hizo esta Corte a la estación de la demandada en la cual sucedió el accidente en cuestión pudo comprobar que por la parte de atrás del edificio existe un callejón o pasadizo que es bastante ancho que conecta la calle 'Boulevard Santiago Veve' con otra calle conocida por 'Virginia'; que esta entrada a la estación que conecta una y otra calle es la que fué interrumpida colocando la demandada los postes en relación y que a juzgar por la apreciación que hizo la Corte de donde los testigos insinuaron estaban colocados, no podía transitar por dicho sitio vehículo alguno, pues dichos postes lo interrumpían, pero no así para transitar libre-

mente personas a pie; que por esa parte de atrás de la estación de la demandada existe la acera en relación la que cuenta como un metro de ancho y que por esta parte hay una puerta que da entrada y salida a la estación y otra más que da entrada y salida a la parte alta del propio edificio y que dicha acera forma parte integrante de la estación y se extiende en toda la longitud de la misma. Así también pudo la Corte apreciar por la prueba practicada y la inspección ocular que los postes en cuestión no existen actualmente en el lugar donde fueran colocados, demostración de que fueron arrancados posteriormente al accidente.

"Que dicho Carlos Vélez Almodóvar con antelación a dicho accidente era persona que gozaba de buena salud y contaba el día del suceso como unos cuarenta y nueve años de edad y que el golpe sufrido y operación quirúrgica que el accidente forzosamente requirió fué la causa próxima y única de su muerte y que si no hubiera acontecido dicho accidente hubiera razonablemente vivido varios años más, durante los cuales hubiera podido proporcionar a sus indicados familiares para su subsistencia los correspondientes recursos pecuniarios y que dichos familiares se ven privados de tales recursos y beneficios.

"Asimismo la Corte entiende probados que si bien es verdad que dicho Carlos Vélez Almodóvar sufría de una hernia dicha dolencia no fué la causa próxima y única de su muerte y sí el golpe recibido que no sólo le estranguló dicha hernia si que también le damnificó los intestinos.

"La Corte es de opinión que al finado Carlos Vélez y Almodóvar no se le puede atribuir negligencia contribuyente dentro de las circunstancias probadas en este caso, pues siendo ésa una defensa afirmativa competía a la parte demandada probarla y no habiendo prueba alguna de la demandada tendente a comprobar tal negligencia contribuyente puesto que la evidencia de la demandada no impugna los hechos esenciales comprobados por la prueba de los demandantes, no se puede atribuir negligencia a dicho finado al haber el mismo ejecutado un acto en la forma ordinaria o corriente de las actividades humanas, como lo es, acudir a una estación de servicio público a obtener un pasaje, una cama, encomendar una carga o cualquiera otra transacción de igual índole y naturaleza.

"    *        *        *        *        *        *        *

"Es de considerarse que la demanda sostiene que el accidente en cuestión sucedió en momentos en que el indicado Carlos Vélez y Almodóvar salía de la estación de la demandada y que por la prueba resulta que dicho accidente aconteció al dirigirse dicho Carlos Vélez

Almodóvar a la estación con objeto de obtener una cama para trasladarse a la ciudad de San Juan, pero considerando que el abogado de los demandantes en el curso de la vista de este caso con el fin de confrontar las alegaciones a la prueba solicitó permiso de esta Corte para que se tuviera por enmendada dicha alegación de la demanda en el sentido que el accidente había sucedido al dirigirse dicho finado a la estación y no al salir de ella, así como solicitó permiso para que los nombres de los demandantes Clorinda Rodríguez y Juliana Vélez y Rodríguez se tuvieran por enmendados por ser conocidas por Flora Rodríguez y Juliana conocida por Julia Vélez y Rodríguez respectivamente y que esta Corte accedió a lo solicitado, se hace caso omiso de estos extremos.''

Recordamos perfectamente los informes del abogado de la corporación apelante en la vista de la moción sobre desestimación que se presentara y en la del caso en su fondo, hemos leído su amplio y laborioso alegato cuidadosamente, hemos estudiado la prueba en todos sus detalles, y si bien tenemos que reconocer que hemos dudado no del alcance, sino de la verdad de lo dicho por algunos testigos sobre ciertos hechos esenciales, no nos sentimos justificados en ley, ni en el ejercicio de la discreción que podamos tener en casos de esta naturaleza, para revocar las conclusiones a que llegara el tribunal sentenciador en los hechos probados que dejamos transcritos. No sólo correspondía al tribunal sentenciador apreciar la prueba y fijar su alcance, si que también decidir sobre la credibilidad de los testigos. Y los hechos declarados probados revelan que ejercitó en este caso concreto su facultad después de un cuidadoso estudio y de haber practicado una inspección ocular del sitio en que ocurrió el suceso. Sería sumamente arriesgado tratar de sustituir nuestro juicio por el suyo. Quizá con la intención de hacer justicia, revocaríamos un fallo que cumplidamente la otorga.

De seguir al apelante en todas sus argumentaciones, extenderíamos esta opinión, de suyo extensa, extraordinariamente—no ha dejado detalle ni aspecto que no invoque y trate—todo ello sin beneficio alguno para la jurisprudencia y para llegar a la misma conclusión que hemos expuesto.

■ Insiste el apelante en que de todos modos debió haberse fijado la indemnización en una suma menor. En la demanda se reclamaron $13,200. La corte concedió $4,000. Basó su conclusión en la siguiente declaración de hechos probados:

"Asimismo estima la Corte probado que dicho Carlos Vélez Almodóvar era hortelano, poseía una hortaliza en esta Ciudad y la cultivaba personalmente y que le producía alrededor de veinte dollars semanales con cuyos haberes sufragaba los gastos más precisos de la subsistencia de la indicada esposa e hijas y que como consecuencia del accidente en cuestión dichos familiares se han visto y se verán imposibilitados de percibir tales haberes durante un tiempo razonable y que considerando la edad de dicho finado, su buen estado de salud, los gastos incurridos en la enfermedad, los sufrimientos morales de los familiares, pérdida de la compañía y demás circunstancias del caso, estima esta Corte debe conceder a los demandantes por concepto de daños y perjuicios la suma de CUATRO MIL DOLLARS, que es la cantidad por la cual se ordena se registre una sentencia a favor de los demandantes Clorinda Rodríguez, conocida por Flora Rodríguez y de sus hijas Aurelia y Juliana, conocida esta última por Julia, Vélez y Rodríguez; la primera como esposa de dicho finado y las otras dos como hijas legítimas y contra la demandada 'The American Railroad Company of Porto Rico', con costas."

La fijación de la cuantía de una indemnización es cuestión de apreciación y la hecha por la corte sentenciadora no debe alterarse, a menos que sea manifiestamente errónea o exagerada. Y no puede sostenerse que la sea en este caso.

■ En cuanto al pronunciamiento de costas, las circunstancias varían. La demandada no se enteró del accidente en el momento en que ocurriera. Fué demandada y era natural que se defendiera, pues desconocía los hechos y se trataba de un caso al parecer dudoso. Lo hizo con persistencia, firmeza y habilidad, pero no con temeridad, a nuestro juicio. Sus argumentos revelan un convencimiento honrado de que la reclamación, en hechos esenciales, sin la prueba de los cuales no hubiera tal vez prosperado, no es cierta y, bajo esas circunstancias, creemos que si bien debe condenársele al pago

de las costas, debe excluirse de ellas el de honorarios de abogados, especialmente habiendo en consideración la actitud que hemos asumido en cuanto a la cuantía de la indemnización.

*Modificada así la sentencia, debe confirmarse.*

El Juez Asociado Señor Córdova Dávila no intervino.