RAFAEL M. BARALT JR., y TRAVELERS FIRE INSURANCE COM-
PANY, demandantes y apelados, v. ENRIQUE BÁEZ GARCÍA
y UNITED STATES FIDELITY AND GUARANTY COMPANY,
demandados y apelantes.

Número 11181.

*Sometido:* 1 de marzo de 1955.  *Resuelto:* 30 de marzo de 1955.

*Enrique Báez García, pro se* y como abogado de la otra parte apelante; *José López Baralt* y *F. Fernández Cuyar,* abogados de los apelados.

*Per Curiam:* Rafael M. Baralt, Jr., y Travelers Fire Insurance Company interpusieron demanda contra Enrique Báez García y United States Fidelity Guarantee Company en reclamación de daños y perjuicios provenientes de un acci-dente de automóviles. Contestada la demanda y después de celebrarse un juicio en los méritos, la corte a quo dictó sentencia condenando a los demandados a pagar (1) a Travelers Fire Insurance Company la suma de $1667; (2) a Rafael M. Baralt, Jr., la suma de $16,555.15; y (3) a la sociedad de gananciales integrada por Rafael M. Baralt, Jr., y Luz María Soltero de Baralt, la suma de $5,799.14, más las costas y $500 para honorarios de abogado. La responsabilidad de la demandada United States Fidelity and Guarantee Co. en dicha sentencia quedó limitada a $10,000 en cuanto concierne a daños personales y a $1,000 en cuanto a los daños a la propiedad más las costas y honorarios de abogado.

Los demandados apelaron. En su primer señalamiento de error impugnan, por ser excesiva, la suma de $16,555.15 concedida al demandante Baralt, Jr., en concepto de daños y perjuicios.

En relación con los daños sufridos por este demandante la corte a quo formuló las siguientes conclusiones de hecho:

"9. En la colisión antes descrita el demandante Rafael M. Baralt, Jr., sufrió lesiones en su cuerpo, incluyendo una severa

contusión en el lado izquierdo del pecho y una fractura compuesta de la patella de su pierna derecha, desarrollándosele luego una intensa flebitis en extremo dolorosa. Fué hospitalizado en la clínica del Dr. Pavía Fernández en la ciudad de San Juan desde noviembre 5 de 1951 hasta noviembre 25 del mismo año y después quedó recluído en su hogar hasta principios del mes de enero del año 1952. Fué atendido por el Dr. León Sheplan quien le operó la pierna derecha y le removió cierto hueso de la rodilla, el cual normalmente sirve para proteger la rodilla contra golpes. Asimismo quedó roto un tendón extensor que es el que facilita poder levantar la pierna con el muslo. En consecuencia la pierna derecha ha quedado en tal condición que ahora no puede sin dolor caminar ligero, ni correr, ni subir escaleras, ni hacer esfuerzo extraordinario alguno.

"10. . . . . . . .

"11. El demandante Baralt pagó al Dr. León Sheplan, por servicios profesionales prestados a él y su esposa, la suma de $400. Tuvo necesidad de utilizar enfermeras especiales, las señoras Cedeño y Valencia, a las cuales satisfizo la cantidad total de $982 en distintos pagos. Por tratamientos de fisioterapia pagó la cantidad de $45. En muletas, medicinas, y gastos necesarios de farmacia tuvo que pagar unos $70. Y por reclusión de él en la clínica del Dr. Pavía pagó $400.03, y por reclusión de su esposa en la misma clínica $378.01. En total, los anteriores desembolsos montaron a la suma de $2,275.04.

"12. El demandante Baralt es accionista y trabaja en una firma de corredores de seguros llamada J. M. Saldaña, Inc. Durante los últimos dos o tres años los ingresos brutos anuales de dicho demandante fluctuaban entre nueve a catorce mil dólares. Con motivo de las lesiones sufridas en este accidente, Baralt tuvo que dejar de trabajar durante dos meses por lo menos, reduciéndosele así sus ingresos en una cantidad que razonablemente estimamos en la suma de $2,000."

Y en sus conclusiones de derecho resolvió:

"6. La fractura sufrida en su pierna por el demandante Baralt, la operación a que fué sometido, el tratamiento subsiguiente, su reclusión en la clínica y luego en su hogar durante más de dos meses, los intensos sufrimientos mentales y morales consiguientes a todo ello, y las consecuencias de tal lesión, justifican la concesión de indemnización a dicho demandante en la suma de $16,555.15."

Los apelantes conceden que de esta suma total de $16,555.15, corresponden a los desembolsos hechos por Baralt, Jr., entre hospital, especialistas, enfermeras, etc., la cantidad de $1,555.15 y por dinero que dejó de percibir durante su ausencia del trabajo, $2,000, o sea, en total $3,555.15. La diferencia entre la suma total concedida a Baralt, Jr., como indemnización y esta última suma, sería $13,000 que fué lo concedídole por los sufrimientos mentales y morales y las consecuencias de la lesión por él recibida. La verdadera controversia gira alrededor de esta partida de $13,000.

Las heridas recibidas por el demandante Baralt, Jr., consistieron de una fractura compuesta de la *patella* derecha y de una contusión en el lado izquierdo del pecho. La *patella* es el "hueso pequeño enfrente de la coyuntura de la rodilla. Es parte de la coyuntura." "La *patella* es parte del tendón en cualquier fractura de la *patella*." El tendón estaba partido. Baralt, Jr., fué sometido a una operación y se le removió el hueso (patella) y se le cosió el tendón. Cuando se remueve la *patella* hay pérdida definitiva de extensión completa de la coyuntura de la rodilla y debilitamiento de ésta cuando está en una posición erecta como cuando se suben escaleras. "Cuando se anda corrientemente no es muy importante. Pero para andar mucho o para subir es muy importante." En cuanto al resultado de la operación, declaró el Dr. Sheplan, quien fué el facultativo que le atendió: "Él recobró bastante bien de la operación, pero todavía tiene atrofia considerable de los músculos alrededor de la rodilla, especialmente de los cuadraceps, con alguna debilidad al subir escaleras y dolor cuando anda mucho." Respecto a las consecuencias probables de la fractura, declaró el mismo testigo, que la más seria complicación es artritis de la rodilla, que se desarrolla a veces en la coyuntura de la rodilla; que no estaba padeciendo de artritis; que ésta le puede sobrevenir aunque eso no es nada más que una posibilidad.

El demandante fué operado el día 6 de noviembre de 1951. Durante los primeros diez días sufrió considerable dolor aun-

que no continuamente porque se le aliviaba con morfina. Durante esos primeros diez días se le puso un molde de yeso en la pierna y cuando se le removió se encontró que se le había desarrollado una flebitis, que es una obstrucción de las venas grandes del pie y de la pierna. La flebitis es dolorosa. Desapareció en el curso de varias semanas sin que se le diera otro tratamiento que no fuera descanso. A los diez y ocho días de operado se le dió de alta en la Clínica Pavía y se trasladó a su hogar, donde el Dr. Sheplan continuó viéndole diariamente durante dos semanas porque le estaba dando tratamiento para doblar la rodilla. Luego le veía una o dos veces por semana durante las seis semanas subsiguientes. Después del tratamiento de fisioterapia la rodilla estaba bastante bien y pudo doblarla como ¾ de lo normal y aunque todavía tenía alguna hinchazón pudo regresar a su trabajo.

Ya hemos visto que la corte a quo, además de conceder al demandante Baralt, los gastos de clínica, médico, enfermeras, etc., ascendentes a $1,555.15, y una suma de $2,000 como dinero dejado de percibir durante su enfermedad, le concedió $13,000 más por los sufrimientos mentales y morales y las consecuencias de la lesión por él recibida, que hacen un total de $16,555.15, que es la suma específica reclamada en la demanda.

Hemos dicho que el fijar la cuantía de la indemnización es cuestión de apreciación y lo hecho por la corte sentenciadora no debe alterarse a menos que sea manifiestamente errónea o exagerada. *Rodríguez* v. *American R. R. Co.*, 43 D.P.R. 493. Aunque un caso específico no es precedente en cuanto a cuantía, *Sánchez* v. *Sucn. I. Serrallés*, 53 D. P. R. 80; *Vázquez* v. *Laugier*, 60 D.P.R. 414, por la razón de que cada caso depende de sus propias circunstancias, *Meléndez* v. *Metro Taxicabs*, 68 D.P.R. 766, al examinar nuestra jurisprudencia no hemos encontrado que bajo circunstancias similares, las cortes inferiores o nosotros hayamos concedido una indemnización tan elevada, como la envuelta en este caso.[1]

[1] En *Pepín* v. *Ready-Mix Concrete*, 70 D.P.R. 758, un joven estudiante de 16 años de edad sufrió una fractura deprimida del cráneo, se le

128

Dada la naturaleza de las lesiones recibidas por el demandante-apelado, y considerando todas las consecuencias de las mismas, nos parece un poco exagerada la suma de $13,000 concedídale por las lesiones y los sufrimientos físicos, debiendo reducirse la misma a $8,000, que es a nuestro juicio razonable. Sumada a las otras partidas hacen un total de $11,555.15, que es una indemnización razonable.

■ Creemos igualmente que asiste la razón a los apelantes al alegar en su segundo señalamiento de error, que la suma de $5,799.14 concedida por las lesiones sufridas por la señora Baralt es excesiva. De esta suma $799.14 corresponden a los gastos de curación y sobre dicha partida no hay controversia.

La señora Baralt sufrió una contusión en la rodilla derecha y la fractura de tres costillas. Además sufrió una torcedura donde se juntan las costillas y el esternón. Estas lesiones le produjeron severos dolores. Estuvo recluída tres

---

operó y estuvo recluído 12 días en el hospital recibiendo extensos tratamientos y curaciones; quedó con una depresión en el cráneo y enteramente incapacitado, mostrando síndromes epilépticos, y habiendo sufrido vértigos, mareos y vahidos. Como consecuencia de la lesión no pudo continuar sus estudios ni dedicarse a trabajo fuerte. A la fecha del juicio continuaba bajo observación y tratamiento médico. La indemnización total de $5,000 concedídale por la corte sentenciadora la aumentamos a $10,000.

En *Del Río* v. *García*, 71 D.P.R. 93, el lesionado era un empleado del Departamento de Hacienda y como tal percibía un sueldo de $200 mensuales. Después de sufrir el accidente fué llevado en estado de inconsciencia a una clínica donde estuvo recluído unos ochenta días. Recibió varias heridas en la cabeza, fuertes contusiones en el pecho, una fractura múltiple de la rodilla en los huesos de la tibia y fíbula y posiblemente una fractura de la base del cráneo. Como resultado de esas lesiones camina con dificultad, no puede subir escaleras, ha perdido la memoria, está incapacitado para continuar trabajando en la clase de trabajo que desempeñó hasta la fecha del accidente; presenta cambios permanentes en su personalidad como resultado de un traumatismo craneal y no podrá volver a trabajar como contable, que es su profesión. Dijimos que tomando en consideración estas circunstancias no era excesiva una indemnización de $8,000 por las lesiones recibidas y por su incapacidad permanente, y $3,500 por sus sufrimientos físicos y angustias mentales.

En *Meléndez* v. *Taxicabs*, supra, el lesionado sufrió una fractura compuesta de la pierna derecha en su tercio inferior, sufrió tres operaciones, y a la fecha del juicio—un año después de recibir la lesión—continuaba recluído en una clínica. Confirmamos la sentencia que le concedió $6,000 por las lesiones, dolores físicos y angustias mentales.

semanas en una clínica. Las fracturas consolidaron bien sin que a la demandante se le ocasionara daño alguno de carácter permanente. Consideradas todas estas circunstancias estimamos que una indemnización de $3,799.14 es justa y razonable.(²)

■ En su tercer señalamiento los apelantes imputan error a la corte a quo al no haber desestimado la demanda en cuanto al demandante Baralt, Jr. Su contención es que éste no podía reclamar para sí una cantidad por concepto de daños y perjuicios pertenecientes a la sociedad de gananciales.

No tienen razón. No hay duda de que la acción para reclamar daños personales sufridos por uno de los cónyuges pertenece a la sociedad de gananciales, *Meléndez* v. *Iturrondo*, 71 D.P.R. 60; pero al esposo, como administrador de dicha sociedad, compete instar la acción. *Valiente & Cía*, v. *Corte*, 68 D.P.R. 529. Eso fué lo que ocurrió aquí. Baralt, Jr., interpuso a su nombre la acción para reclamar los daños sufridos por él y los sufridos por su esposa. La indemnización concedida, corresponde desde luego, a la sociedad de gananciales.

■ El cuarto error, lo formulan los apelantes así:

"El Tribunal Superior de Puerto Rico, Sala de Arecibo, cometió error al no permitir a la parte demandada establecer que el accidente se debió a una condición defectuosa de la carretera mediante evidencia de que en ese mismo sitio han ocurrido innumerables patinazos en los mismos días en que ocurrió el accidente en este caso."

Las partes están de acuerdo en cuanto a la condición defectuosa de la carretera donde ocurrió el accidente. Las autoridades citadas por los apelantes sostienen que al determinarse si hubo negligencia se debe considerar el estado de la

---

(²) En *Martínez* v. *Báez*, 63 D.P.R. 783, el demandante sufrió una extensa y fuerte contusión en el costado izquierdo que produjo un estado marcado de choque traumático con fractura de la décima costilla izquierda, pleuritis seca subyacente al trauma en dicho costado izquierdo y heridas leves y laceraciones en los muslos y los brazos. En apelación consideramos excesiva la suma de $1,100 concedídale por la corte sentenciadora y la redujimos a $500.

carretera.([3])   Este Tribunal ha resuelto que el hecho de una patinada, por sí solo, no es prueba de negligencia.   *Rodríguez* v. *White Star Bus Line*, 54 D.P.R. 310, 321.   Empero, el hecho de que un automóvil patine no es necesariamente una defensa para el conductor.   1 Blashfield, 680, 681.   Todo conductor debe ejercer un cuidado extraordinario para mantener el automóvil bajo control en una carretera resbalosa y evitar así estrellarse contra otro vehículo.   Véase 58 A.L.R. 278.   Art. 15 (*a*) Ley de Automóviles según enmendada.([4])

En este caso la corte a quo concluyó, con base para ello en el récord, que el vehículo del demandado "marchaba a una velocidad consirable de alrededor de cincuenta millas por hora, por la derecha de la carretera, y con motivo de dicha velocidad y del estado resbaloso por mojado de la carretera en ese sitio, comenzó a patinar inclinándose su parte posterior hacia el centro de la carretera y luego rápidamente dando una vuelta completa sobre dicha carretera yendo a chocar violentamente, en el extremo izquierdo de la carretera (mirando hacia Arecibo) contra el automóvil que conducía Baralt, . . ."   Obviamente la velocidad a que marchaba el vehículo del apelante, más bien que la condición resbalosa de la carretera, causó la patinada.   Establecida la negligencia del apelante al conducir su vehículo a gran velocidad por aquel sitio, no vemos en qué podía favorecerle, ni qué pertinencia podía tener la evidencia de que en dicho sitio había ocurrido innumerables patinazos en los mismos días en que ocurrió el accidente al apelante.   El cuarto error tampoco fué cometido.

---

([3]) 1 Blashfield 681; 3–4 Huddy, Cyclopedia 121, 122; *Brinegar* v. *Greene*, 117 F.2d 316, entre otros.

([4]) Dicho artículo dispone:

"Artículo 15.—Enmendado según la Ley 156 de 26 de abril de 1951.

"(*a*) La velocidad de un vehículo de motor deberá regularse con el debido cuidado, teniendo en cuenta el ancho, tránsito, uso y condiciones del camino.   Nadie deberá guiar a una velocidad mayor de la que le permita ejercer el debido dominio del vehículo y reducir la velocidad o parar cuando sea necesario para evitar atropellar a una persona o chocar con algún vehículo u otro artefacto de transporte que esté en la carretera o entre en la misma ajustándose a los requisitos legales y al deber en que están los conductores y otras personas que usan las carreteras de tener el debido cuidado."

*La sentencia apelada será modificada en el sentido de rebajar la indemnización concedida al demandante Baralt, Jr., a la suma de $11,555.15 y la concedida por los daños sufridos por su esposa, a $3,799.14, y así modificada se confirma.*